Robert E. **GREENE**, Acting Regional Director of the First Region of the National Labor Relations Board for and on Behalf of the **NATIONAL LABOR RELATIONS BOARD**, Petitioner,

v.

**SENCO, INC.**; Maco Clothing Corporation; Henry Senese and Phyllis Bocchino, Individually and as Officers and Agents of each of said corporations; and Local 841, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Respondents.

Civ. A. No. 67–652–G.

United States District Court
D. Massachusetts.

March 30, 1968.

Norman Zankel, N.L.R.B., Boston, Mass., for plaintiff.

Melvin Pierce, Peabody, Brown, Rowley & Storey, Boston, Mass., for defendants Senco, Inc. and Henry Senese.

Joseph E. Lepie, Boston, Mass., for defendants Maco Clothing Corp. and Phyllis Bocchino.

James T. Grady, Boston, Mass., for defendant Local 841.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GARRITY, District Judge.

This cause came on to be heard upon the verified petition of Robert E. Greene, Acting Regional Director of the First Region of the National Labor Relations Board, for and on behalf of said Board, for a temporary injunction pursuant to Section 10(j) of the National Labor Relations Act, as amended, 29 U.S.C. § 160 (j), pending the final disposition of the matters involved pending before said Board, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed in said petition. Respondents filed answers to said petition. A hearing on the issues raised by the petition and answers was duly held and all parties were afforded full opportunity to be heard and to argue on the evidence and the law. The court has fully considered the petition, answers, evidence, Requests of Petitioner of each respondent to admit facts and genuineness of documents, stipulations, arguments and briefs of counsel. Upon the entire record, and pursuant to Rule 52, Federal Rules of Civil Procedure, the court, adopting in part the proposed findings of fact and conclusions of law of petitioner, finds and concludes as follows:

*Findings of Fact*

1. Petitioner is Acting Regional Director of the First Region of the Board, an agency of the United States, and filed the petition herein for and on behalf of the Board.

2. (a) On December 2, 1966, Boston Joint Board, International Ladies' Garment Workers' Union, AFL-CIO (herein called the ILG) pursuant to the provisions of the Act filed a Charge with the Board; on December 7, 1966 filed an Amended Charge; on December 22, 1966 filed a Second Amended Charge; on January 23, 1967 filed a Third Amended Charge; on March 16, 1967 filed a Fourth Amended Charge; and on May 18, 1967 filed a Fifth Amended Charge, alleging in parts material herein, that Senco, Inc.; Maco Clothing Corporation; Henry Senese and Phyllis Bocchino, individually and as officers and agents of each said corporate Respondent (herein called Senco, Maco, Senese and Bocchino, respectively) have engaged in and are engaging in unfair labor practices within the meaning of Sections 8(a) (1) and (2) of the Act.

(b) On January 18, 1967, the ILG, pursuant to the provisions of the Act filed a Charge with the Board; and on January 27, 1967 filed a First Amended Charge, alleging that Local 841, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (herein called Local 841) has engaged in and is engaging in unfair labor practices within the meaning of Sections 8(b) (1) (A) and (2) of the Act.

3. The aforesaid charges and amended charges were referred to petitioner as Acting Regional Director of the First Region of the Board. On January 31, 1967, the General Counsel of the Board on behalf of the Board by Albert J. Hoban, Regional Director for the First Region, issued a complaint pursuant to Section 10(b) of the Act alleging, in part, that Senco, Senese, Maco and Bocchino have engaged in and are engaging in unfair labor practices within the meaning of Sections 8(a) (1) and (2) of the Act. On February 21, 1967, the General Counsel of the Board, on behalf of the Board, by Albert J. Hoban, Regional Director of the First Region, issued an Order consolidating the aforesaid two unfair labor practice cases and a second complaint pursuant to Section 10(b) of the Act alleging (in addition to the allegations previously made against Senco, Maco, Senese and Bocchino) that Local 841 has engaged in and is engaging in unfair labor practices within the meaning of Sections 8(b) (1) (A) and 8(b) (2) of the Act. On May 23, 1967, the General Counsel of the Board, on behalf of the Board, by Albert J. Hoban, Regional Director of the First Region, issued an Amended Consolidated Complaint alleging in part material herein that Senco, Maco, Senese and Bocchino have engaged in and are engaging in unfair labor practices within the meaning of Sections 8(a) (1) and (2) of the Act and that Local 841 had engaged in and is engaging in unfair labor practices within the meaning of Sections 8(b) (1) (A) and (2) of the Act. Said Amended Consolidated Complaint was further amended on June 15, 1967 at a hearing before a Trial Examiner of the Board, in all respects as set forth in a Notice of Intention to Amend the Amended Consolidated Complaint dated June 7, 1967.

4. There is, and petitioner has, reasonable cause to believe that at all times material herein:

(a) Senco has been a corporation duly organized under and existing by virtue of the laws of the Commonwealth of Massachusetts; Maco is and has been a corporation duly organized under and existing by virtue of the laws of the Commonwealth of Massachusetts; Senese and Bocchino have been residents of Massachusetts.

(b) Senco maintained places of business at 104 Meridian Street and at 10 Frankfort Street in East Boston, Massachusetts, where it engaged in the manufacture, sale and distribution of dresses and sportswear and related products. Maco has maintained a place of business at 421 Broadway, Revere, Massachusetts, where it is and has been engaged in the manufacture, sale and distribution of dresses and sportswear and related products.

(c) Senco in the course and conduct of its business caused large quantities of fabric, machinery, supplies and equipment, and related materials used by it in the manufacture of dresses and sportswear to be purchased and transported in interstate commerce from and through various States of the United States other than the Commonwealth of Massachusetts, and caused substantial quantities of dresses, sportswear and related materials to be sold and transported from said Massachusetts locations in interstate commerce to States of the United States other than the Commonwealth of Massachusetts. Senco annually manufactured and shipped directly to points outside of the Commonwealth of Massachusetts finished products exceeding $50,000 in value.

(d) Maco in the course and conduct of its business causes and continuously has caused large quantities of fabric, ma-

chinery, supplies and equipment, and related materials used by it in the manufacture of dresses and sportswear to be purchased and transported in interstate commerce from and through various States of the United States other than the Commonwealth of Massachusetts, and causes and continuously has caused substantial quantities of dresses, sportswear and related materials to be sold and transported from said Massachusetts locations in interstate commerce to States of the United States other than the Commonwealth of Massachusetts. Maco annually manufactures and ships directly to points outside of the Commonwealth of Massachusetts finished products exceeding $50,000 in value.

(e) The ILG and Local 841, unincorporated associations, are organizations in which employees participate and which exist for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment or conditions of work.

(f) Henry Senese was employed by Senco as its General Manager and has been a general agent of Senco; Mary B. Senese has been the wife of Henry Senese and also is and has been known as Mary B. DeSimone, who has been an officer and director of Senco; Kenneth P. Senese is Henry Senese's brother and Phyllis Baldassari is his mother; Phyllis Bocchino has been Treasurer of Maco; Julia Bocchino has been President of Maco; Irene Rotondi has been Clerk of Maco.

(g) Each of the individuals named below was an employee of Senco and was a supervisor within the meaning of Section 2(11) of the Act:

| | |
|---|---|
| Henry Senese | Irene Rotondi |
| Phyllis Bocchino | Mike Viarella |

(h) Each of the individuals named below is an employee of Maco and has been a supervisor within the meaning of Section 2(11) of the Act:

| | |
|---|---|
| Julia Bocchino | Henry Senese |
| Phyllis Bocchino | Mike Viarella |
| Irene Rotondi | |

(i) Each of the individuals named below has been an employee, agent and/or authorized representative of Local 841:

Dominic J. Zenga
Nicholas C. Roumeliotos

5. On various dates in October and November, 1966, respondent Maco, through its supervisors and agents, solicited its employees to join and support respondent Local 841, permitted meetings between its employees and representatives of Local 841 and threatened its employees with termination of employment if they failed to support Local 841.

6. On November 8, 1966, respondent Local 841 did not represent a majority of Maco employees in an appropriate unit. On November 8, 1966, Maco did not yet have in its employ a substantial or representative complement of its ultimate production and maintenance work force.

7. On November 8, 1966, Maco recognized Local 841 as collective bargaining representative of its employees at a time when Local 841 did not represent an uncoerced majority of employees in an appropriate unit. On November 14, 1966, Maco executed a collective bargaining agreement containing union security and check-off provisions with Local 841 at a time when Local 841 did not represent an uncoerced majority of the employees in an appropriate unit. Since November 14, 1966, Maco maintained and administered a collective bargaining agreement containing union security and check-off provisions with Local 841 even though Local 841 at no time represented an uncoerced majority of employees in an appropriate unit.

8. Local 841, by its officers, agents, organizers and representatives, from on or about November 1, 1966, executed a written Agreement of recognition with Maco on November 8, 1966, at a time when Local 841 did not represent an uncoerced majority of employees in an appropriate unit; executed a collective bargaining agreement containing union security and check-off provisions with Maco on November 14, 1966, at a time

when Local 841 did not represent an uncoerced majority of the employees in an appropriate unit; maintained and administered a collective bargaining agreement containing union security and check-off provisions with Maco even though Local 841 has at no time represented an uncoerced majority of employees in an appropriate unit; threatened Maco employees with termination of employment if they would not join or assist Local 841; and promised a paid holiday in order to induce Maco employees to join or assist Local 841.

9. Senco, by Henry Senese, and Senese individually, suggested the Teamsters to an employee in October 1966; moved some of its employees and machinery from 10 Frankfort Street, East Boston, Massachusetts, to 421 Broadway, Revere, Massachusetts, prior to November 4, 1966; told its employees, in December 1966, that after the beginning of 1967 Senco would be known as Maco and that no new collective bargaining agreement would be signed by Senco; told Senco employees that ILG check-off would be discontinued; and closed down its operations sometime in March, 1967.

10. The acts and conduct of respondents set forth in Findings of Fact 5–9 above, occurring in connection with the operation of respondents have a close, intimate, and substantial relation to trade, traffic and commerce among the several states and tend to lead to and do lead to labor disputes burdening and obstructing commerce and the free flow of commerce. It may fairly be anticipated that, unless enjoined, respondents will continue and repeat the acts and conduct set forth in Findings of Fact 5–9 above, or similar or like acts and conduct.

### Conclusions of Law

1. This court has jurisdiction of the parties and of the subject matter of this proceeding, and under Section 10(j) of the Act is empowered to grant injunctive relief.

2. There is, and petitioner has, reasonable cause to believe that:

(a). Senco at all times material engaged in commerce within the meaning of Sections 2(6) and (7) of the Act.

(b). Maco is and has been engaged in commerce within the meaning of Sections 2(6) and (7) of the Act.

(c). Boston Joint Board, International Ladies' Garment Workers' Union, AFL-CIO and Local 841, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America each is a labor organization within the meaning of Sections 2(5) and 8(b) of the Act.

(d). Respondents Maco, Senco, Bocchino and Senese have engaged in unfair labor practices within the meaning of sections 8(a) (1) and (2) of the Act and respondent Local 841 has engaged in unfair labor practices within the meaning of sections 8(b) (1) (A) and (2) of the Act, all such practices affecting commerce within the meaning of sections 2 (6) and (7) of the Act, and a continuation of these practices will impair the policies of the Act as set forth in section 1(b) thereof.

3. To insure the efficacy of the Board's final order and to prevent irreparable harm, it is just and proper, pending the final disposition of the matters herein involved pending before the Board, (1) that respondents Maco, Bocchino and Senese be enjoined from recognizing respondent Local 841 as the representative of their respective employees unless and until Local 841 shall have been certified by the Board as the exclusive representative of such employees; (2) that respondents Maco, Senco, Bocchino and Senese be enjoined from assisting or supporting in any way Local 841, unless and until Local 841 shall have been certified by the Board as the exclusive representative of their respective employees; (3) that respondent Local 841 be enjoined from representing the employees of respondents Maco, Bocchino and Senese unless and until Local 841 shall have been certified by the Board as the exclusive representative of such employees; (4) that respondents Maco, Bocchino, Senese and Local 841 be en-

joined from maintaining or giving effect to the recognition agreement of November 8, 1966, or to the collective bargaining agreement of November 14, 1966, or entering into any extension thereof or any superseding collective bargaining agreement; (5) that respondents Maco, Senco, Bocchino, Senese and Local 841 be enjoined from in any other manner interfering with any of the employees of respondents Maco, Senco, Bocchino and Senese in the exercise of their rights to tion as described in the preceding para- self-organization.

4. Unless the court issues an injunc- graph, any final order of the Board in favor of ILG would in the court's opin- ion come too late to revive ILG as the ef- fective representative of the company's employees. By the time a final order was handed down by the Board, many months from now at the earliest, the employees would in all probability have severed all ties with ILG which would have suffered irreparable harm. Cf. Brown, for and on behalf of N. L. R. B. v. Pacific Telephone and Telegraph Co., 9 Cir., 1955, 218 F.2d 542. The employees too would have been harmed irreparably by having had thrust upon them repre- sentation different from that freely se- lected by them, in derogation of a basic remedial purpose of the Act.

Accordingly, an appropriate order granting a temporary injunction will be entered.

## MEMORANDUM OF DECISION

The court believes that it should ex- plain the standard it has applied in granting the foregoing injunctive re- lief and discuss respondents' principal argument in opposition.

■ Respondents have argued, and the court agrees, that its power to grant temporary injunctive relief under § 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j), is narrowly, if not clear- ly, circumscribed. Section 10(j) itself is far from clear:

The Board shall have power, upon issuance of a complaint as provided

in subsection (b) charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, * * * for appropriate temporary re- lief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order *as it deems just and proper.* (Emphasis added.)

The meaning of the "just and proper" limitation has been the subject of much recent judicial comment. See, generally, Note, 45 Texas L.Rev. 358 (1966). In McLeod, for and on behalf of N. L. R. B. v. General Electric ("General Electric"), S.D.N.Y., 1966, 257 F.Supp. 690, rev'd 366 F.2d 847, 2d Cir., 1966, judgment set aside and remanded for further proceedings, 385 U.S. 533, 87 S.Ct. 637, 17 L.Ed.2d 588, 1967, the Dis- trict Court and the Court of Appeals dis- agreed regarding the proper standard for determining the right to injunctive re- lief under § 10(j). The District Court applied two tests: (1) whether "the im- pact upon the public interest is grave enough to justify swifter corrective ac- tion than the normal process of Board adjudication and court enforcement," 257 F.Supp. at p. 708, and (2) "whether the Board has 'reasonable cause to be- lieve' that the accused party has been guilty of unfair labor practices", 257 F. Supp. at p. 709. The Court of Appeals on the other hand applied alternative tests: whether the Board has "demonstrated that an injunction is necessary to pre- serve the status quo or to prevent any ir- reparable harm." 366 F.2d at p. 850. Because of events intervening between the decision of the Court of Appeals and its consideration, the Supreme Court did not think it appropriate "to decide at this time the proper construction of § 10(j)." 385 U.S. at p. 535, 87 S.Ct. at p. 639.

Since the Supreme Court's decision in January, 1967, the Courts of Appeals for the Tenth and Eighth Circuits have giv-

en their interpretations of the standard. In Angle v. Sacks, 10th Cir., 1967, 382 F.2d 655, the court stated at p. 660:

> We do think, however, that the legislative history indicates a standard in addition to the "probable cause" finding that must be satisfied before a district court grants relief. The circumstances of the case must demonstrate that there exists a probability that the purposes of the Act will be frustrated unless temporary relief is granted. Administration of the Act is vested by Congress in the Board, and when the circumstances of a case create a reasonable apprehension that the efficacy of the Board's final order may be nullified, or the administrative procedures may be rendered meaningless, temporary relief may be granted under section 10(j). Preservation and restoration of the status quo are then appropriate considerations in granting temporary relief pending determination of the issues by the Board.

In Minnesota Mining and Manufacturing Co. v. Meter ("3M"), 8 Cir., 1967, 385 F.2d 265, the court expressed its "general agreement" with the *Angle* case. Specifically, the court said at p. 270:

> In our view, * * * district judge's discretion in granting temporary relief under Secton 10(j) cannot be activated and motivated solely by a finding of "reasonable cause" to believe that a violation of the Act has occurred. * * * Section 10(j) is reserved for a more serious and extraordinary set of circumstances where the unfair labor practices, unless contained, would have an adverse and deleterious effect on the rights of the aggrieved party which could not be remedied through the normal Board channels. In determining the propriety of injunctive relief the district court should be able to conclude with reasonable probability from the circumstances of each case that the remedial purpose of the Act would be frustrated unless immediate action is taken.

These cases, and all others brought to the court's attention, are in agreement that the first inquiry which the court must make in determining whether to grant § 10(j) relief is whether there is reasonable cause to believe that an unfair labor practice has been committed. The court has made this inquiry, receiving evidence at a full hearing, and has determined that there is reasonable. cause to believe that respondents have coerced employees and otherwise engaged in unfair labor practices within the meaning of §§ 8(a) (1) and (2) and §§ 8(b) (1) (A) and (2) of the Act.

However, the *General Electric, Angle,* and *3M* cases make it clear that the finding of such reasonable cause does not end the issue. A further standard must be met before § 10(j) relief may properly be granted, but the standards proposed by the three courts differ. *General Electric* sets out alternative tests: necessity of preserving the status quo or prevention of irreparable harm. *Angle* does not consider the latter alternative but focuses upon the preservation of the status quo and asserts that this standard is a proper consideration only if the circumstances create "a reasonable apprehension that the efficacy of the Board's final order may be nullified" unless temporary relief is granted. *3M* seems to combine the tests of *General Electric* and *Angle* in holding that § 10(j) relief is to be granted (1) "where the unfair labor practices, unless contained, would have an adverse and deleterious effect on the rights of the aggrieved party which could not be remedied through the normal Board channels" and (2) where "the remedial purpose of the Act would be frustrated unless immediate action is taken." While the three courts use different terminology, the tests which they propose are basically the same.

No one of these decisions supports the argument set forth by respondents in the instant case, which may be summarized as follows: (1) before the Board, petitioner has alleged (in addition to the alleged violations brought be-

fore this court) that the respondent companies have violated § 8(a) (5) of the Act by refusing to bargain collectively with the lawful representative of their employees, International Ladies' Garment Workers' Union, AFL–CIO ("ILG"), which is the charging party before the Board; (2) if the petitioner prevails before the Board on its § 8(a) (5) allegation, the Board will order the reinstatement of the ILG as the bargaining representative of the respondent companies' employees; (3) the principal element of the injunctive relief sought here by the petitioner, viz., enjoining of respondent companies from recognizing the respondent Teamsters Local 841 as the bargaining representative of their employees, is not necessary to insure the efficacy of the Board's final order and therefore an injunction should be denied.

■ Assuming that this court must consider the fact that petitioner has charged respondent companies with a § 8(a) (5) violation before the Board and that this charge if successful would result in an order by the Board reinstating the ILG, it does not follow that § 10(j) injunctive relief should not be granted even though unnecessary to insure the effectiveness of such an order. The respondents' argument ignores the "irreparable harm" test of the *General Electric* and *3M* cases. The court has concluded that injunctive relief is necessary in this case to prevent irreparable harm to the ILG arising from its inability to represent the respondent companies' employees in the interim between the present time and the issuance of the Board's final order.

■ If the *Angle* test is the proper one, i. e., that § 10(j) injunctive relief may be granted only to preserve the status quo so as to insure the efficacy of the Board's final order,[1] injunctive re-

lief should nevertheless be granted on other grounds. First, the assumption that the court must consider the fact that a § 8(a) (5) violation is charged before the Board has not been established. Respondents have cited no authority requiring petitioner to present to the court its entire case before the Board or requiring the court to consider the pendency of charges other than those which the petitioner has presented to the court under § 10(j). In the court's opinion, these other charges are irrelevant to the present proceeding and the court has fashioned its injunctive relief in order to insure the efficacy of an order which will issue if the Board should find that the charges which have been presented to the court were in fact reasonably based.

■ Secondly, assuming that the court must consider the pendency of the § 8(a) (5) charges before the Board, an order reinstating ILG is not the only order which may conceivably emanate from the Board. Toward insuring the efficacy of the Board's final order, the court is not limited to a consideration of the broadest order sought by petitioner. The Board may find the § 8(a) (5) charge to be without merit and accordingly refuse to order reinstatement of the ILG. At the same time the Board could find that the other charges are meritorious and order an election. The injunctive relief herein granted is necessary to insure the efficacy of such an order.

The court agrees with the respondents that granting the present injunctive relief allows the petitioner to have his cake and eat it too. Petitioner has herein acquired protection should he lose on his § 8(a) (5) charge before the Board without any jeopardy to his pressing that charge there. But this result seems far from absurd when viewed against the

---

1. The court will not treat specifically respondents' further contention that petitioner is taking inconsistent positions before the Board and before this court as to what constitutes the status quo to be preserved and should be foreclosed from doing so. As *3M* makes clear,

supra, 385 F.2d at p. 273, "the status quo is the last uncontested status which preceded the pending controversy". In other words, the status quo may vary according to what the controversy or charge is.

alternative urged by the respondents. Their argument would protect persons who the court has reasonable cause to believe have committed various unfair labor practices from being subjected to a § 10 (j) injunction if one of them is also alleged (outside of the court) to have committed an additional § 8(a) (5) violation. That would allow the respondents to have someone else's cake and eat it too. The court's action here puts the respondents in no worse, or better, position than those who have not had a § 8(a) (5) charge added to the list of charges brought against them.

Respondents have objected strenuously to the "piecemeal" approach which they say that petitioner has taken. But even if petitioner had brought before this court all his charges before the Board and sought here temporary injunctive relief reinstating the ILG until the final order of the Board, the court would have been free to deny such injunctive relief for a number of reasons [2] and to grant the relief which has herein been granted. Indeed, this is exactly what the court did in Dick v. Sinclair Glass Co., supra.

 A final comment is in order with respect to respondents' humane plea that injunctive relief be denied lest the employees of the respondent companies be deprived of union representation for what promises to be a long period of time before final determination by the Board. The court believes that the *General Electric, Angle,* and *3M* cases permit consideration of this important factor in determining whether injunctive relief would be "just and proper" and it has been weighed in the instant case. The court has concluded that the threatened irreparable harm and need to insure the efficacy of the Board's final order outweigh any likely harm to the employees resulting from the relief granted. It appears unlikely that the respondent

companies will take advantage of the unrepresented status of their employees at a time when the companies are defending themselves before the Board.

---

2. E. g., because of the final effect which such an order tends to have on the merits of the controversy, Greene v. A. G. Pollard Company, D.Mass., 1966, 258 F. Supp. 475, 477; because substantial representational issues are matters requiring the expertise of the Board, Dick, for and on behalf of N.L.R.B. v. Sinclair Glass Co., N.D.Ind., May 1, 1967, 283 F.Supp. 505.