Bernard LEVINE, Regional Director for Region 8 of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

C & W MINING CO., INC. and/or C & W Hauling Co., Inc., Respondent.

No. C79–17 Y.

United States District Court,
N. D. Ohio, E. D.

Feb. 22, 1979.

Melvin E. Feinberg, Robert L. Burch, William Shuzman, Region 8, N. L. R. B., Cleveland, Ohio, for petitioner.

Maxwell J. Gruber, Sheldon R. Jaffrey, Zellmer & Gruber, Cleveland, Ohio, John Orr Beck, Lisbon, Ohio, for respondent.

BATTISTI, Chief Judge.

The Regional Director for Region 8 of the National Labor Relations Board ("Board") has petitioned the Court to issue a temporary injunction, pursuant to Section 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j), to restrain Respondent C & W Mining Co., Inc.[1] ("Company") from committing further alleged unfair labor practices, as charged by the Fraternal Association of Special Haulers, Local 100 ("Union"), pending final determination of the merits by the Board. The Court will grant the injunctive relief sought by the Board.

Section 10(j) of the Act empowers the Board to petition the Court for temporary injunctive relief when the Board deems appropriate. By seeking temporary injunctive relief, the Board does not surrender its authority to determine the merits of the charges filed. Rather, the Court acts merely to preserve the status quo of the situation so that the ultimate Board ruling and order will be efficacious. The purpose and scope of the Court's jurisdiction and authority is more narrowly circumscribed than in the normal case. Under Section 10(j) of the Act, the Court will grant injunctive relief if the Board persuades the Court that there is reasonable cause to believe the Respondent has committed an unfair labor practice and that the requested relief is just and proper. *Solien v. Merchants Home Delivery Service, Inc.,* 557

1. Respondent has incorporated two companies: C & W Mining Co., Inc., and C & W Hauling Co., Inc. From the affidavit of William Catlett, sole owner of both corporations, given to a Board field examiner, it appears that only C & W Mining Co., Inc. was engaged in actual business operations during the time of the alleged unfair labor practices. Therefore, this opinion will refer to Respondent as C & W Mining Co. However, the terms of the order will reach both C & W Mining Co. and C & W Hauling Co. as an integrated business enterprise, so that Respondent cannot evade the order by changing the corporate organization.

F.2d 622 (8th Cir. 1977). Furthermore, where several inferences from the evidence are proper, the Court must accept the inference most favorable to the Board. *Hirsch v. Pick-Mt. Laurel Corp.,* 436 F.Supp. 1342, 1350 (D.N.J.1977). Because the Court, in a proceeding pursuant to Section 10(j) of the Act, finds only that there is reasonable cause to believe that unfair labor practices have been committed, the detailed findings of ultimate fact normally made by the Court in nonjury civil cases are not proper or necessary. Following a full hearing and based on the entire record, the Court enters this memorandum opinion which shall constitute findings of fact and conclusions of law.

Petitioner is the Regional Director for Region 8 of the Board, and has filed the petition commencing this case on behalf of the Board. The Regional Director has acted subsequent to the filing of a charge by the Union filed with the Board on October 6, 1978, Case No. 8–CA–12314, twice amended, alleging violations of Sections 8(a)(1), (2), (3) and (5) of the Act. The Board issued a Complaint and Notice of Hearing in January, 1979 alleging that the Company has committed, and is committing, unfair labor practices in violation of these sections of the Act.

Respondent admits that: 1) C & W Mining is a corporation duly incorporated in the State of Ohio, with its office and place of business at Lisbon, Ohio, where it is engaged in the business of mining and transporting coal; 2) C & W Mining ships goods valued in excess of $50,000 per year in interstate commerce; 3) C & W Mining is an employer engaged in commerce within the meaning of Sections 2(6) and (7) of the Act; and 4) William Catlett, President and sole stockholder, Earl Manning, Vice Presi-

dent, and Hertzel Douglas, Dispatcher, are agents of C & W Mining and C & W Hauling and are supervisors within the meaning of Section 2(11) of the Act.

C & W Mining Co., Inc. and C & W Hauling Co., Inc. are affiliated businesses with common officers, ownership, directors, and operators, and constitute a single integrated business enterprise. At the time in question, only C & W Mining was actually in business operation.[2]

The Union is a labor organization within the meaning of Section 2(5) of the Act. The unnamed employee committee formed by the truck drivers at the suggestion of the Company officials is also a labor organization within the meaning of Section 2(5) of the Act.

An appropriate bargaining unit for employees of the Company is all truck drivers employed by the Company at Lisbon, Ohio, excluding all mining equipment operators, all mechanics, all office clerical employees, all office professional employees, all guards, all supervisors, and all other employees. On or about October 1, 1978, a clear majority of employees within this bargaining unit, at least sixteen of the twenty-four truck drivers, had signed authorization cards which unambiguously declared the intention of the truck drivers that the Union be their exclusive representative to bargain collectively with the Company in regard to rates of pay, wages, hours, and other terms and conditions of employment. After obtaining this majority, the Union representative, Mr. Joseph O'Donnell, demanded recognition from the Company, making the demand on separate occasions on October 1, 1978 to Mr. Manning and Mr. Catlett.[3]

---

2. While both the Board and the Company developed much testimony at the hearing in regard to the operations of C & W Mining and C & W Hauling, this Court will not let form control substance. Regardless of form, C & W Mining is the company at fault in this case, because only it was conducting business in October, 1978 and because all pay checks to the truck drivers issued from C & W Mining. It is immaterial that the truck drivers signed their cards as employees of C & W Hauling, under delusion instilled by actions of the Company officials.

3. Another clear indication of the Union's majority status on October 1, 1978 is the uncontroverted testimony that approximately twenty of the twenty-four truck drivers participated for several days in the strike against the Company.

The Company refused to recognize the Union for purposes of collective bargaining on October 1, 1978 and every subsequent day. The words and actions of Company officials demonstrate that the Company's refusal was not based on a good faith doubt about the Union's majority status, but resulted from a strong desire to prevent at least this Union from gaining a foothold within the ranks of the Company's employees.

Beginning on October 1, 1978 and continuing to the present day, the Company has engaged in many actions designed to destroy the majority status of the Union and discourage the truck drivers from attempting in the future to bring any other outside union into the Company. These actions include: threats of business closure; interrogation of employees concerning union membership, activities, and sympathies; numerous declarations that the Company would never recognize a union; threats of discharge from employment because of union activities; promise and grant of benefits to persuade employees to abandon the Union and any future attempt to unionize; direct dealing with the employees to discourage unionization; the sale of trucks and threats of the sale of trucks, which would result in loss of employment, in reaction to the union-organizing activities; solicitation of grievances by the Company to discourage union activities; giving the appearance of surveillance over the employees' union activities; formation of an unnamed employee committee to supplant the outside Union, and domination or financial support of this committee; apparent discharge of employees who were leaders in the organization of the union at the Company; reprisals, such as assignment to more arduous work or sale of trucks, against certain employees because of their leadership in the union-organizing activities; coercion to persuade employees to abandon the Union; and refusal to bargain with the Union on matters of pay, hours, conditions of employment or the sale, or advertising for sale, of trucks.

The result of the Company's actions was the breaking of the strike and the dissipation of the Union's majority status within a week from the time of the initial demand by the Union for recognition. The Company has continued to take action to insure that the truck drivers will never again attempt to organize into a union. The Company, in January, 1979, sold two trucks and is currently advertising for, and is attempting to execute, the sale of its remaining trucks. The Company intends to sell all the trucks in order to close its hauling operations. However, the mining end of the business will remain in operation. Future hauling will be subcontracted to other hauling companies or to independent operators. The Company has taken these steps unilaterally, without negotiation with the Union. Numerous statements by Company officials make clear that the Company is selling the trucks in retaliation against the previous union-organizing activities and to insure that no union will be formed at the Company now or in the future.[4]

The Court concludes that there is reasonable cause to believe that the Company has acted as set forth above and that these actions violate Sections 8(a)(1), (2), (3) and (5) of the Act. Having subject matter and personal jurisdiction in this case, the Court has the power to issue injunctive relief pending the outcome of proceedings before the Board.

The Court should grant injunctive relief only if just and proper. It is well established that the Court should act, if necessary, to preserve the status quo, so that the ultimate Board order will be effective. *Seeler v. Trading Port, Inc.,* 517 F.2d 33 (2nd Cir. 1975); *Angle v. Sacks,* 382 F.2d 655 (10th Cir. 1967). Traditional equitable principles are irrelevant. The Court will consider, in attempting to implement the

---

**4.** The Company attempted to prove at the hearing that the sale of the trucks is motivated by financial reasons which arose before the union activities. Such evidence is immaterial as the Court finds reason to believe that a major moti- vation of the Company is to forestall the organization of a union of truck drivers at the Company. *NLRB v. American Mfg. Co.,* 351 F.2d 74 (5th Cir. 1962).

national labor policy established by Congress in the Act, the potential harm to each party from the issuance or nonissuance of an injunction. *Hirsch v. Pick-Mt. Laurel Corp., supra,* at 1351. A particularly salient factor is the erosion of union strength which would occur if the Court declined to issue an injunction. *International Union, U.A.A. & A. Impl. Workers v. NLRB,* 145 U.S.App.D.C. 384, 449 F.2d 1046 (1971) (per curiam); *Greene v. Senco., Inc.,* 282 F.Supp. 690 (D.Mass.1968).

■ Applying these principles, the Court finds that the issuance of an injunction is just and proper. There is ample uncontroverted evidence which establishes grounds for reasonable belief that the Company has engaged in numerous substantial and flagrant unfair labor practices. It is reasonable to believe that the Company is continuing to violate the Act. The Company has sold two trucks and plans to sell all its trucks. Such action violates the Act as an unlawful partial closure and an unlawful refusal to bargain with the Union. *NLRB v. American Mfg. Co., supra.* These current violations as well as the persisting effects of the numerous egregious unfair labor practices committed by the Company in October, 1978 make a fair election impossible today.

■ In circumstances where employer misconduct virtually nullifies the possibility of a free election and ample objective evidence, such as signed, unambiguous authorization cards, exists to demonstrate the prior majority status of the Union, a bargaining order is proper. *Seeler v. Trading Port, Inc., supra* ; *Hirsch v. Pick-Mt. Laurel Corp., supra; Smith v. Old Angus, Inc.,* 82 L.R.R.M. 2930, 69 CCH Labor Cases ¶ 13,229 (D.Md.1973). *See NLRB v. Gissel Packing Co., Inc.,* 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). A bargaining order is warranted in this case. The Court has found on reasonable belief that unambiguous authorization cards established the Union's majority status; the Company subsequently refused to bargain with the Union; the Company undermined Union strength, eventually destroying Union representation, by engaging in numerous, flagrant unfair practices; the Company is continuing to refuse to bargain and to commit other unfair labor practices with the aim of insuring that no seeds of unionization will germinate in the future; and there is no substantial ground for belief that the proposed bargaining unit of all truck drivers is inappropriate.

Union strength at the Company has dissipated to a large extent in the past several months and is likely to be irreparably debilitated during the time necessary for Board hearings unless the Court acts now. In issuing a bargaining order, the Court is preserving the status quo as it existed just before the start of the unfair labor practices. *Seeler v. Trading Port, Inc., supra; Smith v. Old Angus, Inc., supra; Henderson v. Gibbons & Reed Co.,* 53 CCH Labor Cases ¶ 11,081 (D.N.Mex.1966). Fixing the status quo at any subsequent time would reward the Company for violating the law, while fixing the status quo at any previous time would unfairly penalize the Union for engaging in activities permitted and encouraged by the Act. The Court believes that any harm to the Company from the bargaining order is offset by the value of lending relief to the Union and the employees now, rather than limiting the extent of possible future relief to inadequate make-whole compensation, such as back pay.

The value of the right to enjoy the benefits of union representation is immeasurable in dollar terms once it is delayed or lost. If the Court does not issue a bargaining order, the Company will have succeeded for now in its effort to resist the union-organizing efforts of its truck drivers. Moreover, the Company will have gained time by committing violations of the Act to entrench its anti-union campaign, and, in such a case, time would clearly be on the side of the Company. The Court will not permit the Company to profit from its wrongdoing.

IT IS THEREFORE ORDERED THAT pending the final disposition by the National Labor Relations Board of the charges of unfair labor practices against C & W Mining Co., Inc., and C & W Hauling Co., Inc.,

Respondent C & W Mining Co., Inc. and C & W Hauling Co., Inc., its officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with them, be, and hereby are, enjoined and restrained from:

Threatening employees with plant closure.

Interrogating employees concerning their union membership activities, sympathies, desire or other protected concerted activities.

Coercing employees by informing them that Respondent would never recognize the Union, or making any other coercive threat.

Threatening employees with loss of employment because of their union membership, activities, sympathies, desire or other protected concerted activities.

Promising or granting benefits to employees in an attempt to persuade them to abandon the Union or refrain from engaging in other protected concerted activities.

Engaging in, or attempting to engage in, direct dealing with its employees in order to discourage their union activities, sympathies and membership or other protected concerted activities.

Threatening employees with the sale of Respondent's trucks because of the employees' union membership, activities, sympathies, desires or other protected concerted activities.

Soliciting grievances from its employees in order to discourage union activities.

Engaging in surveillance of, or giving the impression of engaging in surveillance of, employees' union or other protected concerted activities.

Initiating, forming, sponsoring and promoting the employee committee, and dominating, assisting or otherwise interfering with the formation of the committee or contributing financial or other support to it.

Terminating the employment of employees because they had, or Respondent believed they had, engaged in union activity and other protected concerted activity.

Assigning employees more arduous jobs for the reason that they had, or Respondent believed they had, joined, supported, assisted or favored the Union, or making any other reprisal for past or present union activities.

Advertising for sale or selling Respondent's trucks, unless as part of an agreement between Respondent and the exclusive union bargaining representative.

Refusing to bargain collectively concerning rates of pay, wages, hours of employment, other terms and conditions of employment, and the sale of trucks with Fraternal Association of Special Haulers, Local 100, the exclusive bargaining representative of the employees in the appropriate bargaining unit described below.

Conducting themselves in any other manner violative of Sections 8(a)(1), (2), (3) and (5) of the National Labor Relations Act.

## AND ARE ORDERED TO:

Promptly, upon request, bargain with the Fraternal Association of Special Haulers, Local 100 as the exclusive representative of all the employees in the appropriate bargaining unit described below with respect to rates of pay, wages, hours, other terms and conditions of employment, and the sale of trucks, and, if an understanding is reached, enter into in a signed Agreement. The appropriate bargaining unit is:

All truck drivers employed at Respondent's facility located at Lisbon, Ohio, excluding all mining equipment operators, all mechanics, all office clerical employees, and professional employees, guards and supervisors as defined in the Act and all other employees.