George M. DICK, Acting Regional Director of the Twenty-fifth Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

SINCLAIR GLASS COMPANY and American Flint Glass Workers' Union of North America, AFL–CIO, and its Local Unions No. 29, No. 35, and No. 513, Respondents.

Civ. No. 1831.

United States District Court
N. D. Indiana,
Fort Wayne Division.

May 1, 1967.

George M. Dick, Acting Regional Director, Twenty-fifth Region, National Labor Relations Board, and Arthur G. Lanker, Indianapolis, Ind., for petitioner.

Wm. E. Ervin, of Peterson, Ervin & Barry, Hartford City, Ind., and Lynnville G. Miles, Indianapolis, Ind., for respondents.

## MEMORANDUM OF DECISION, ORDER, AND TEMPORARY INJUNCTION

ESCHBACH, District Judge.

This cause is before the court upon the verified petition of George M. Dick, Acting Regional Director of the Twenty-fifth Region of the National Labor Relations Board (herein called the Board), for the issuance of a temporary injunction under § 160(j) of Title 29 of the United States Code. After unfair labor practice charges were filed with the Board by the United Glass and Ceramic Workers of North America, AFL–CIO, CLC, and its Local No. 66 (herein jointly called the Ceramic union), the Board issued an amended and consolidated complaint against respondents herein. The amended and consolidated complaint is now pending before the Board.

In his petition for injunctive relief, petitioner asserts that there is reasonable cause to believe that respondent Sinclair Glass Company (herein called Sinclair) has violated §§ 8(a) (1), 8(a) (2), and 8(a) (5) of the National Labor Relations Act (herein called the Act) and that there is reasonable cause to believe that respondents American Flint Glass Workers Union of North America and its Locals 29, 35, and 513 (herein jointly called the Flint union) have violated §§ 8(b) (1) (A) and 8(b) (2) of the Act. Petitioner avers that unless respondents are restrained, it can reasonably be anticipated that they will continue to engage in violations of the provisions of the Act and that the injunctive relief sought is just and appropriate under the circumstances.

With respect to petitioner's allegation that there is reasonable cause to believe that Sinclair has violated § 8(a) (5) of the Act, petitioner requests this court to enjoin Sinclair from failing or refusing upon demand to bargain in good faith with the Ceramic union. The total effect of such a determination and consequential decree of this court would be to compel bargaining between Sinclair and the Ceramic union. See Jaffe v. Henry Heide, 115 F.Supp. 52 (S.D.N.Y.1952); Reynolds v. Curley Printing Company, 247 F.Supp. 317 (M.D.Tenn.1965).

Respondent Sinclair has filed an answer and brief in opposition to the petition for injunctive relief and contends that the court should not enjoin it from refusing to bargain with the Ceramic union because representational and bargaining unit issues are involved which should be decided in the first instance by the Board. Both in this action and in the proceeding before the Board, Sinclair is apparently contending that (1) an accretion of employees into an existing bargaining unit has resulted and (2) the certified bargaining unit herein involved is no longer appropriate.

Respondent Flint union has filed a motion for summary judgment, seeking dismissal of the petition as it affects the Flint unions.

The petition for a temporary injunction will be granted except insofar as it requests the court to enjoin Sinclair from failing or refusing to bargain in good faith with the Ceramic union. With the consent of petitioner, the petition will be dismissed as to the Flint union without prejudice.

After charges were filed with the Board by the Ceramic union, a hearing was held by a duly-appointed trial examiner of the Board in Hartford City, Indiana, on November 29, 1966. Pursuant to stipulation of the parties and by order of this court, the cause has been submitted upon the record of November 29, 1966 hearing, and the court accord-

ingly accepts the record of such hearing as a correct representation of the factual basis for the court's determination of the questions herein involved.

Petitioner is the acting Regional Director of the Twenty-fifth Region of the National Labor Relations Board.

Respondent Sinclair Glass Company is engaged in the manufacture, sale, and distribution of decorated glassware and related products and maintains its place of business within this judicial district, at Hartford City, Indiana. During the preceding twelve months, Sinclair has transacted sufficient business of the type required by the Act to confer jurisdiction.

American Flint Glass Workers' Union of North America and its Locals 29, 35, and 513 are unincorporated labor organizations within the meaning of the Act and are engaged in transacting business within this judicial district.

This court has jurisdiction over the parties herein and, under § 10(j) of the Act, is empowered to grant appropriate injunctive relief.

## BACKGROUND OF THE LABOR DISPUTE

The record reveals that the labor dispute which culminated in this action for injunctive relief stems from the acquisition of a second glass-producing facility by Sinclair. On or about May 13, 1966, Sinclair entered into a business arrangement with Canton Corporation which enabled Sinclair to operate a plant which had recently been leased by Canton Corporation. (This plant will be referred to as the Johnston plant.) The Johnston plant is adjacent to Sinclair's primary facility in Hartford City, Indiana, (herein called the Hartford City plant), and is separated from the Hartford City plant by a fifty-foot-wide roadway.

In 1941, while the Johnston plant was owned and operated by the Johnston Glass Company, Inc., the Board conducted an election, and, on May 15, 1941, it certified the Ceramic union as the exclusive bargaining representative of employees at the Johnston plant. The unit certified as appropriate consisted of:

"All production, maintenance and clerical employees employed directly in production, exclusive of office clerical employees, professional employees, guards and supervisors as defined in the Act."

Following the 1941 certification, the Johnston Glass Company, Inc., entered into successive collective bargaining agreements with the Ceramic union in accordance with the Board's unit determination. The last such agreement was to be effective until August 6, 1965. However, on January 4, 1965, Johnston Division of Gas Appliance Supply Corporation (herein called Johnston Division) purchased the Johnston plant and expressly assumed the existing collective bargaining agreement between Johnston Glass Company, Inc., and the Ceramic union. This agreement was continued by means of various extensions until May 13, 1966.

After leasing the Johnston plant on or about May 13, 1966, Sinclair determined that its contract with the Flint union at its Hartford City plant should be extended to the newly-acquired Johnston plant. On two separate occasions, the Ceramic union made recognitional demands upon Sinclair and offered to prove its majority status by a union card check. However, Sinclair declined this offer and refused to extend recognition to the Ceramic union, contending that the Johnston plant and employees were an accretion to the Hartford City plant and, thus, that only one union would represent all its employees (the Flint union). Subsequently, Sinclair engaged in certain conduct which petitioner alleges forms a predicate for this court to find that there is reasonable cause to believe that Sinclair has violated the provisions of the Act.

In order to secure the temporary injunctive relief sought, petitioner must show, and the court must find, that there is reasonable cause to believe that the alleged unfair labor practices have

been committed, and, secondly, that the relief prayed for is just and proper under the circumstances. National Labor Relations Act, § 10(j); Douds v. International Longshoremen's Ass'n, 241 F.2d 278, 281 (2d Cir. 1957); McLeod v. General Electric Company, 257 F.Supp. 690 (S.D.N.Y.1966), rev'd in matters not here relevant, 366 F.2d 847 (2d Cir. 1966).

## THE 8(a) (1) AND 8(a) (2) CHARGES

██ After carefully reviewing the entire record, the court holds that there is reasonable cause to believe that respondent Sinclair Glass Company has violated §§ 8(a) (1) and 8(a) (2) of the Act and that the temporary injunctive relief sought is just and proper.

The evidence presented at the November 29, 1966 hearing indicates that despite the fact that the employees at the Johnston plant have never designated the Flint union as their collective bargaining representative, Sinclair has extended recognition to the Flint union. Moreover, it appears that as of November 19, 1966, the Ceramic union probably represented a majority of the employees at the Johnston plant. (The union dues records kept by Johnston Division show payment of dues to the Ceramic union; as of November 19, 1966, thirty of the thirty-four employees employed by Sinclair at the Johnston plant were former employees of Johnston Division who had paid dues to the Ceramic union.)

After recognizing the Flint union, Sinclair proceeded to compel employees to join the Flint union in accordance with the union security clause in Sinclair's contract with the Flint union at its primary Hartford City plant.

On August 22, 1966, Sinclair officials urged employees at the Johnston plant to attend a meeting and free dinner to be held August 23, 1966. At the ensuing meeting and dinner, Sinclair officials and representatives of the Flint union discussed membership in the Flint union with the Johnston employees. There is considerable evidence indicating that these employees were informed that their union (the Ceramic union) was nonexistent and that if they would join the Flint union, their "troubles would be over." Further, these employees were induced to join the Flint union by promises that they would receive raises and additional life insurance coverage in accordance with the Flint union contract if they would become members of the Flint union. Finally, the Johnston employees were threatened with discharge if they failed to join the Flint union.

Subsequent to the meeting of August 23, 1967, a Sinclair supervisor, Mr. Joseph Benedict, questioned employees regarding membership in the Flint union and warned several employees to become members of the Flint union or Sinclair would discharge them.

Section 8(a) (1) of the Act provides that it shall be an unfair labor practice for an employer to " * * * interfere with, restrain, or coerce employees in the exercise of rights guaranteed in section 7." Section 7 of the Act was enacted to guarantee employees the right " * * to bargain collectively through representatives of their own choosing." National Labor Relations Board v. Pennsylvania Greyhound Lines, 303 U.S. 261, 58 S.Ct. 571, 82 L.Ed. 831 (1938).

After reviewing the entire record, the court holds that there is reasonable cause to believe that Sinclair coerced employees in the exercise of Section 7 rights by requiring membership in the Flint union as a condition to continued employment. And, further, there is reasonable cause to believe that Sinclair, acting through its representatives, made promises and other inducements calculated to interfere with and restrain employees in the exercise of their right to freely select a bargaining representative. Finally, there is reasonable cause to believe that by interrogating employees, representatives of Sinclair have coerced and restrained employees within the meaning of the Act. Therefore, there is reasonable cause to believe that Sinclair has violated § 8(a) (1) of the Act. Mastro Plastics Corp. v. National Labor

Relations Board, 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309 (1956); Joy Silk Mills v. National Labor Relations Board, 87 U.S.App.D.C. 360, 185 F.2d 732 (1950); Dixie Bedding Mfg. Co. v. National Labor Relations Board, 268 F.2d 901 (5th Cir. 1959); National Labor Relations Board v. Douglas and Lomason Co., 333 F.2d 510 (8th Cir. 1964); National Labor Relations Board v. M. J. Mc-Carthy Motor Sales Co., 309 F.2d 732 (7th Cir. 1962).

■ Section 8(a) (2) of the Act provided that it shall be an unfair labor practice for an employer

" \* \* \* to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it."

The record indicates that Sinclair has recognized the Flint union as the exclusive bargaining representative at the Johnston plant when the Flint union did not represent a majority of the employees. In pursuing such a course of conduct, there is reasonable cause to believe that Sinclair contributed support to the Flint union in violation of § 8(a) (2) of the Act. International Ladies Garment Workers' Union v. National Labor Relations Board, 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961). Moreover, in compelling employees to become members of the Flint union and in engaging in interrogation of employees to effectuate membership in the Flint union, there is reasonable cause to believe that Sinclair has lent assistance to the Flint union and interfered with the administration of the Ceramic union. National Labor Relations Board v. Wagner Iron Works and Bridge, Structural and Ornamental Iron Workers, etc., 335 F.2d 506 (7th Cir. 1966).

■ ■ Temporary injunctive relief restraining Sinclair from engaging in conduct violative of §§ 8(a) (1) and 8(a) (2) is a just and proper remedy. Section 10(j) of the Act was enacted to enable the Board to pursue swift judicial sanctions in order to abate probable unfair labor practices and to preserve the issues pending before the Board. Section 10(j) relief is particularly appropriate where the alleged violations of the Act are flagrant and where irreparable damage may result to a union from the " \* \* \* drifting away of their members to the union favored by the employers." Brown v. Pacific Telephone and Telegraph Company, 218 F.2d 542, 544 (9th Cir. 1955); and see McLeod v. General Electric Company, supra.

By insisting upon the application of the Flint union contract to the employees at the Johnston plant, Sinclair has shown substantial disregard for the rights of these employees under the Act. Unless restrained from such a course of conduct, a serious flouting of the provisions of the Act may reasonably be anticipated, and the posture of the labor dispute before the Board may be vastly altered. Therefore, the relief sought by petitioner is just and proper. Evans v. International Typographical Union, 76 F. Supp. 881 (S.D. Ind. 1948); Brown v. Pacific Telephone and Telegraph Company, supra.

### THE 8(a) (5) CHARGES

Petitioner also asserts that there is reasonable cause to believe that respondent Sinclair has refused to bargain collectively with the Ceramic union and, in so doing, has violated § 8(a) (5) of the Act.

Section 8(a) (5) of the Act provides that it shall be an unfair labor practice for an employer " \* \* \* to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) [§ 9(a) of the Act] of this title."

■ Normally, Board certification of a union as an appropriate bargaining unit gives rise to a continuing duty on behalf of the employer and the certified union to bargain collectively. For the first, or certification, year the union is conclusively presumed to be an appropriate unit and possess majority status. In subsequent years, the duty to bargain is presumed to continue until the employer has fair doubts concerning the union's

majority status or the appropriateness of the unit. Brooks v. National Labor Relations Board, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954); National Labor Relations Board v. M. J. McCarthy Motor Sales Co., supra; National Labor Relations Board v. Elliott-Williams Co., 345 F.2d 460, 463–464 (7th Cir. 1965). The Court of Appeals for the Seventh Circuit has stated that " * * * to be 'fair' doubt must have a rational basis in fact." National Labor Relations Board v. John S. Swift Company, 302 F.2d 342, 346 (7th Cir. 1962).

It is clear from the foregoing discussion that Sinclair could not have entertained a good faith doubt as to the majority status of the Ceramic union. Since at least thirty of the thirty-four employees at the Johnston plant had been members of the Ceramic union prior to Sinclair's acquisition of the facility, there appears to be no serious contention that the Ceramic union was not the majority representative at the Johnston plant.

However, Sinclair contends that there is a representational question now before the Board and that until a determination is made by that body, Sinclair should not be ordered to bargain collectively with the Ceramic union. At the hearing before the Board's trial examiner, Sinclair indicated that it intends to transfer employees from the Hartford City plant to the Johnston plant and that it may intermesh the operations of the two facilities. Sinclair has consistently argued that such an intention led it to believe that the unit certified by the Board in 1941 is no longer appropriate. Upon this basis, Sinclair has refused to extend recognition to the Ceramic union pending final disposition of the matter before the Board.

In the Board's amended and consolidated complaint, it has alleged that " * * * all production, maintenance, and clerical employees of Respondent employed directly in production at its Johnston plant * * * constitute a unit appropriate for purposes of collective bargaining within the meaning of section 9(b) of the Act." Respondent Sinclair has consistently denied this allegation, and apparently this issue is before the Board for its consideration.

Moreover, in summarizing the issues presented at the November 29, 1966 hearing, the Board's trial examiner stated in part that:

" * * * taking the case from my description to all the facts * * * it would seem that if by some chance the nature and structure of the corporate entity here, and the employer's business is such that * * * there has actually been an accretion of the Johnston employees into the unit of the Sinclair employees * * * practically all of the facts alleged as violations against both the employer and the Flint union would be quite permissible. * * * "

While the court is unwilling to concur in the concluding remarks of the examiner, it is apparent that both the Board in its complaint and the examiner in his preliminary remarks were cognizant of a serious representational questi·n in the proceeding before the Board. Whether the issue is categorized as an "accretion" of employees into an existing bargaining unit or as a question concerning the appropriateness of the existing units may largely be an exercise in semantics. Nevertheless, Sinclair appears to be correct in assuming that such an issue is before the Board and will be considered by it.

■■ Where a substantial representational issue has been raised and is pending before the Board, the court is of the opinion that a mandatory injunction compelling bargaining is inappropriate. In utilizing its expertise, the Board must carefully consider the various factors which determine the appropriateness of a bargaining unit. Sinclair's Johnston and Hartford City plants are situated within fifty feet of each other and apparently are served by the same private roadway. The production techniques and finished products of the two plants appear to be sufficiently similar to per-

mit Sinclair to freely transfer employees between the two facilities. Moreover Sinclair may transfer employees to and from each plant, provided that in doing so it does not deprive employees of rights guaranteed by the Act. National Labor Relations Board v. Condenser Corporation of America, 128 F.2d 67, 76 (3d Cir. 1942).

From the foregoing discussion, it is apparent that the representational issues raised by Sinclair should be determined in the first instance by the Board. In establishing the Board, Congress delegated to it broad discretionary powers to effectuate the purposes of the Act. In view of the Board's discretion in representational matters and its vast experience and expertise in these areas, it has often been stated that the primary determination of questions involving representation is within the exclusive province of the Board. National Labor Relations Act § 9(b); National Labor Relations Board v. J. W. Rex Company, 243 F.2d 356, 359 (3d Cir. 1957); National Labor Relations Board v. Esquire, Inc., 222 F.2d 253, 255 (7th Cir. 1955).

In reversing the issuance of § 8(a) (5) injunctive relief by a district court, the Court of Appeals for the Second Circuit recently concluded:

"The Board cannot abdicate one of the prime purposes for which it was created and thus deprive the Court of the expertise which would be available to it in reviewing the Board's holding in an enforcement proceeding. In short, this Court's decisions on the ultimate proposition of law will be better based after the Board has applied its fund of knowledge to the problems involved. Indeed, this was the Congressional plan." McLeod v. General Electric Company, 366 F.2d at 850. (2d Cir. 1966), stayed pending application for writ of certiorari, 87 S.Ct. 5, 6, 17 L.Ed.2d 45 (1966).

Although the *General Electric* case, supra, involved a dissimilar factual predicate from the case at bar, the considerations inherent in the issuance of injunctive relief in a § 8(a) (5) setting are quite applicable. In situations where a representational question has been presented and is currently pending before the Board, there is a particular need for the primary exercise of the Board's discretion before this court should compel bargaining between the parties involved.

Petitioner appears to contend that Sinclair should have petitioned the Board for a redetermination of the representational questions herein involved. While it is true that under the Board rules this is the customary mode of raising these issues, the reported cases indicate that this is not the exclusive method of doing so. Several cases have been discovered where at least by way of dicta the courts have indicated that representational questions disputing the appropriateness of the units may be raised by way of defense to an unfair labor practice charge. See National Labor Relations Board v. M. J. McCarthy Motor Sales, supra; National Labor Relations Board v. Elliott-Williams Company, supra.

Finally, the Board requests the court to compel bargaining between the Ceramic union and Sinclair in order to preserve the "status quo" and to preserve the issues before the Board. Although the standards governing the propriety of § 10(j) injunctive relief are by no means well defined (see McLeod v. General Electric Company, 385 U.S. 533, 87 S.Ct. 637, 639, 17 L.Ed.2d 588 (1966)), even if the court assumes that the purpose of § 10(j) is to preserve or restore the status quo, such a purpose would not be furthered by the issuance of the relief herein sought by petitioner. Until the Board determines the representational issues now pending before it, the court should not attempt to place the parties in status quo, since the designation of the appropriate bargaining unit at the Johnston plant may yet be altered by subsequent Board order and court enforcement.

By prohibiting Sinclair and its representatives from engaging in any

affirmative conduct violative of the provisions of the Act, the issues before the Board will be preserved for decision. Were the court to compel bargaining between the Ceramic union and Sinclair as petitioner requests, a resulting collective bargaining contract might well extend beyond the date of the Board's determination. Therefore, the court is of the opinion that a portion of the injunctive relief sought by petitioner is inappropriate.

At this time, the court does not pass upon the issue of whether there is reasonable cause to believe that respondent Sinclair has violated § 8(a) (5) of the Act. From a study of the record, it is obvious that Sinclair has declined to recognize or bargain with the Ceramic union. However, the court does not now decide whether such a course of conduct constitutes reasonable cause to believe that Sinclair has violated § 8(a) (5) of the Act.

Rather, the court holds that under the circumstances here involved, it would not be just and proper to order Sinclair to bargain collectively with the Ceramic union. In exercising its broad equity power, the court must carefully weigh the effect of the injunctive relief sought by petitioner. The determination that reasonable cause exists to believe Sinclair has violated § 8(a) (5) and the issuance of the relief requested by petitioner would dispose of one of the very issues presented to the Board by way of defense to the unfair labor practice charges. Therefore, because of the ramifications of the issuance of a decree compelling bargaining, and the special need for the prior application of the Board's expertise, the Court holds that the relief sought by petitioner requiring Sinclair to bargain at this time is not just and proper under the circumstances. Accordingly, the petition for injunctive relief will be denied with respect to the alleged violation of § 8(a) (5) of the Act.

■ Respondents American Flint Glass Workers' Union of North America and its Local Unions 29, 35, and 513 have submitted affidavits indicating that any dispute over representation between the Flint union and the Ceramic union no longer exists and that the Flint union no longer asserts any right to represent the employees at the Johnston plant. Therefore, petitioner having advised the court that the Board has no objection to the dismissal of the Flint union as parties respondent, it is

Ordered that the petition be dismissed as to the Flint union without prejudice.

This memorandum includes the court's findings of fact and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure.

## ORDER GRANTING TEMPORARY INJUNCTION

Having determined that there is reasonable cause to believe that respondent Sinclair Glass Company has engaged in and is engaging in acts and conduct in violation of §§ 8(a) (1) and 8(a) (2) of the Act, affecting commerce within the meaning of § 2(6) and (7) of the Act; that unless restrained, such acts are likely to continue; and that appropriate injunctive relief is just and proper in order to preserve the issues presently before the Board in the labor dispute herein presented.

Therefore, upon the entire record, it is ordered, adjudged and decreed that pending final disposition of the matters herein involved now before the National Labor Relations Board, respondent Sinclair Glass Company, its officers, representatives, agents, servants, employees, attorneys, and all persons acting in concert or participation with it or them are hereby enjoined and restrained as follows:

A. From contributing support or assistance to the American Flint Glass Workers Union of North America, AFL–CIO, or its Local Unions Nos. 29, 35, or 513, or recognizing or continuing to recognize the said union or unions as the bargaining representative of its employees at the newly-acquired Johnston plant for the purpose of dealing with said employees concerning grievances, labor

disputes, wages, rates of pay, hours of employment or other conditions of employment, unless and until said union or its local unions have been certified by the Board as the collective bargaining representative of employees at the said Johnston plant.

B. From maintaining, enforcing, or giving any effect to the collective bargaining agreement which Sinclair entered into with the American Flint Glass Workers Union of North America, AFL–CIO, and its Local Unions Nos. 29, 35, and 513, or from extending, renewing or modifying such agreement insofar as the employees at the Johnston plant are concerned.

C. From interfering with, restraining, or coercing its employees at the Johnston plant in the exercise of the right to self-organization, to form, join and assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, or to refrain from any or all such activities.