Henry SHORE, Regional Director for Region Six of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, CARPENTERS DISTRICT COUNCIL OF WESTERN PENNSYLVANIA, AFL-CIO, Respondent.

Civ. A. No. 70-896.

United States District Court,
W. D. Pennsylvania.

Aug. 13, 1970.

Michael A. Taylor, National Labor Relations Board, Pittsburgh, Pa., for petitioner.

J. Mark Maurizi, Pittsburgh, Pa., for the Union.

Richard Martin, Pittsburgh, Pa., for Elman Associates and others and 316 Construction Co.

## OPINION

ROSENBERG, District Judge.

This proceeding is here on a petition filed by Henry Shore, the Regional Director for Region Six of the National Labor Relations Board (the Board), pursuant to § 10(*l*) of the National Labor Relations Act (the Act), as amended, 61 Stat. 149; 73 Stat. 544, 29 U.S.C. § 160(*l*),[1] seeking a temporary injunction

---

1. Section 10(*l*) provides: "Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4) (A), (B) or (C) of section 158(b) of this title, * * * the preliminary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like

against the respondent, United Brotherhood of Carpenters and Joiners of America, Carpenters District Council of Western Pennsylvania, AFL–CIO, pending the final disposition of a charge filed by 316 Construction Co., Inc. (316) alleging that the respondent has engaged in, and is engaging in, unfair labor practices. Specifically, it was charged that the respondent violated and is violating § 8(b) (4) (i) and (ii) (D) of the Act, 29 U.S.C. § 158(b) (4) (i) and (ii) (D),[2] which proscribes action to force or require an employer to assign particular work to employees in a particular labor organization or in a particular trade, craft or class, rather than to employees in another labor organization or in another trade, craft or class, in circumstances where the employer involved is not failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work.

Based upon the petitioner's conclusion that reasonable cause exists to believe that the respondent has engaged and is presently engaging in the unfair labor practice charged, the petitioner seeks the issuance of temporary injunctive relief pending the resolution of this matter before the Board.[3]

Marvin G. Elman is the president and 99% owner of the stock of the following corporations: 316 Construction Co., Inc.; Elman Associates, Inc.; Four Seasons Heating and Cooling Co., Inc. and H.B.P. Properties, Inc. In addition he is a general partner in Mt. Royal Associates. In his capacity as chief executive officer, Elman directs the functions and determines the policies of these corporations and is the executive in control of all activities concerning these corporations. The activities of all these corporate entities are inter-related in that their overall function is to acquire land, build apartment buildings, and procure supplies both for the construction and the ultimate maintenance of the buildings. One of the corporations pays the wages and salaries of the employees in all the corporations, and the employees interact and perform services indiscriminately for all the corporations. Elman as president of these corporations assigns the work and supervises the employees with indifference to corporate distinctions.

character in the office where it is filed or to which it is referred. If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law * * * In situations where such relief is appropriate the procedure specified herein shall apply to charges with respect to section 158(b) (4) (D) of this title."

2. Section 8(b) (4) (i) and (ii) (D) provides that "It shall be an unfair labor practice for a labor organization or its agents (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

"(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work * * *"

3. § 10(l) supra, footnote 1.

On July 21, 1970, "316" was engaged in the construction of a 97 unit apartment project at 7070 Forward Avenue, in the City of Pittsburgh, Allegheny County, Pennsylvania. During the course of this construction it was engaged in the performance of services for all the other Elman corporations, and was actively engaged with Mt. Royal Associates in the apartment construction where excavation and installation of footers had been commenced. Two carpenters out of five employed by the agglomerate corporations had been assigned by Elman to the job to construct frames for footers, in aid of an independent contractor who was to pour concrete.

On July 21 and July 22, 1970, two business agents of the respondent Union, Gene Smigas and Adam Petrovich whose function was to organize new members, visited the construction site and demanded that Elman sign contracts with respondent Union covering the wages, working conditions and hours of employment of the nonunion carpenter employees working for Elman. The respondent's representative Smigas; said to Elman "I want that work for the men I represented." Elman pointed to the wooden forms to be used as footers, and explained that he had given that work to his own men, whereupon Smigas stated, "We don't want any nailers on that job." Elman stated that "My men aren't nailers," and the conversation terminated. On July 21 and July 22, 1970, Elman rejected both overtures made by the respondent's representative. Following that the respondent placed pickets on the job with signs that read "Elman Associates, Inc. has no contract covering working conditions with the Carpenters District Council of Western Pennsylvania." They thereupon influenced independent truck drivers not to deliver needed construction supplies, and so stopped the construction. With the work stoppage at this construction site, Elman transferred the two carpenters to work at his other 31 or 32 apartment buildings. On August 5th, the day before the postponed hearing, the respondent applied to the Board for certification as union representative for the two of Elman's five carpenters, who had been at the construction project.

The issue before me for determination is in reality not whether the respondent Union was attempting to gain employment for its members at the expense of Elman's carpenters or whether respondent was attempting to organize Elman's employees, as it is whether or not the Board has demonstrated that there was reasonable cause to believe that the elements of an unfair labor practice were present. If it is true that the Union was attempting to gain employment for its own members, then the picketing is a violation of § 8(b) (4) (i) and (ii) (D). However, if organizing of the construction carpenters was the sole aim of the Union, then no illegal activity has occurred because of the exemption provided in the building and construction industry by subsection 8(f) of the Act, 29 U.S.C. § 158(f).[4]

In Schauffler v. Local 1291, International Longshoremen's Association, 292 F.2d 182, 187, C.A. 3, 1961, former Chief Judge Biggs said, "The Board need not show that an unfair labor practice has been committed, but need only demonstrate that there is reasonable cause to believe that the elements of an unfair labor practice are present. Nor need the Board conclusively show the validity of the propositions of law underlying its charge; it is required to demonstrate merely that the propositions of law which it has applied to the charge are substantial and not frivolous."

---

4. Subsection 8(f) provides that "It shall not be an unfair labor practice under subsections (a) and (b) of this section for an employer engaged primarily in the building and construction industry to make an agreement covering employees engaged (or who, upon their employment, will be engaged) in the building and construction industry with a labor organization of which building and construction employees are members * * * "

My function here in reality is to effectuate the purposes of Congress in providing for the Board's action in circumstances such as these. Congress has invested the Board with broad powers to resolve problems between employers and employees, and where expertise is required, courts are not empowered to substitute their opinions for that of the Board. The purpose of the Board is to provide orderly functioning between employers and employees and to investigate and ascertain when, if any, violations of fair labor principles have occurred. The determination of the occurrence of violations is left initially to the broad discretion of the Board. N.L.R.B. v. Great Atlantic & Pacific Tea Company, 407 F. 2d 387, C.A. 5, 1969.

Where as here, Congress has vested the Board with the power to grant and fashion appropriate relief, the power of the Board is broad. Teamsters Local Union No. 5 v. N.L.R.B., 406 F.2d 439, C.A. 5, 1969; N.L.R.B. v. Bush Hog, Inc., 405 F.2d 755, C.A. 5, 1968. In Section 10 of the Act, Congress established a procedure whereby those individuals who have grievances under the Act can come before the Board for processing the entire claim, and if necessary invoke the jurisdiction of a court. Section 10($l$) [5] provides that upon a showing of reasonable cause, the Board may petition the district court for temporary injunctive relief pending its final disposition of the matter.

The Board filed its petition on July 29, 1970, and invokes our aid to prevent picketing until it, the Board, has a fair opportunity to perform its functions in accordance with the dictates of Congress. Thus, it is, that I am called upon to make a determination of whether the Board has reasonable cause to believe that a violation of the Act has occurred and is justified in seeking the Court's aid in the performance of its function.

The respondent argues that there are two valid defenses here which defeat the right of the Board to hear the matter in controversy: First, that the Board lacks jurisdiction over the subject matter on the grounds that the wrong corporation was the original complainant, and second, that the evidence discloses that the respondent was conducting a membership campaign at 7070 Forward Avenue, and therefore is within the exception provided for in Subsection 8(f). [6]

The difficulty with the first contention of the respondent is that we have here what may be loosely termed an entity consisting of "siamese corporate quadrupeds". Here four corporations are tied together and so intertwined and interconnected that there is no telling which of the four is performing a single act, since all four act collectively. They all occupy the same office. All four corporations have the same president. The executive functions for all four and their control rests in the same individual. All employees serve indistinguishably all four corporations, and are paid by one bookkeeping or accounting source. Factually it would seem that the president in common of the four corporations is the employer. In reality, all four corporate entities are the alter-egos of Elman, and together function as one conglomerate whole, as a corporate veil for Elman's (the owner's) purposes. To hold otherwise would be to disregard reality in favor of superficial technicalities.

The N.L.R.B. has on many occasions dealt with similar situations, and combined various employers as one integrated enterprise for the purpose of meeting the jurisdictional requirements. N.L.R.B. v. Jordan Bus Company, 380 F.2d 219, C.A. 10, 1967; N.L.R.B. v. City Yellow Cab Company, 344 F.2d 575, C.A. 6, 1965; Operating Engineers Local 428, 67 LRRM 1144 (Jan. 16, 1968). It is not for me to determine this procedure of the Board erroneous. Such matters are much better left to the expertise of the Board.

As to whether or not the activities of the respondent were promotional or de-

---

5. See footnote 1, supra.

6. See footnote 4, supra.

signed to gain reassignment of the work to respondent's members, I must remember the testimony of the organizing witness. He stated that there were approximately 600 unemployed members of respondent's organization. It is more reasonable to conclude that the respondent was attempting to secure work for those unemployed members, rather than adding two more members.

Section 8(b) (4) (i) and (ii), subparagraph (D), prohibits all picketing and other banned conduct, whether primary or secondary, for the prohibited object. Section 8(b) (4) (i) and (ii), subparagraph (D), is designed to protect commerce from disruption over jurisdictional claims by one union that work should be assigned to employees who are members of, or represented by, it instead of to employees who are members of, or represented by, another union, or who belong to another trade, craft or class, such as a group of unrepresented employees. An employer is free to make work assignments without being subjected to strike pressure by a labor organization, unless the employer is failing to conform to an order or certification of the Board.

Application for injunctive relief under Section 10(*l*) of the Act is properly made to a district court. Danielson v. Dressmakers Joint Council, ILC. Wkrs. U., 287 F.Supp. 57 (S.D.N.Y., 1968). The Act empowers the Board, upon the filing of appropriate charges to issue, hear and determine complaints that employers or labor organizations have engaged in unfair labor practices within the meaning of the Act (Section 10(a), (b) and (c)). Congress was aware, however, that proceedings of this character—which ultimately are reviewable by the Court of Appeals (Section 10(e) and (f))—are protracted and that certain unfair labor practices being committed by labor organizations gave, or tended to give, rise to such serious and unjustifiable interruptions to commerce that their continuance, pending disposition by the Board, would result in irreparable injury to the purposes of the Act.

Kennedy v. Sheet Metal Workers, Int. Ass'n Local 108, 289 F.Supp. 65 (C.D. Cal., 1968); Dick v. Sinclair Glass Company, 283 F.Supp. 505 (N.D.Ind., 1967). Accordingly, in order to prevent a frustration of the statutory purpose, Congress provided in Section 10(*l*) of the Act, the pertinent procedure which must be followed.

The injunctive relief contemplated in Section 10(*l*) is interlocutory to the final determination of the unfair labor practice matter pending before the Board, and is limited to such time as may expire before the Board renders its final decision. Kennedy v. Sheet Metal Workers, Int. Ass'n Local 108, *supra*. As in the case of traditional equity practice with respect to interlocutory relief, the prerequisite to the granting of relief under Section 10(*l*) is a finding by the court that there is reasonable cause to believe that a violation of the Act, as charged, has been committed and that injunctive relief is "just and proper." A court is not called upon to decide whether, in fact, a violation of the Act has been committed; the ultimate determination with respect to this question has been placed by Congress with the Board, subject to review by the court of appeals pursuant to Section 10(e) and (f) of the Act. J. P. Stevens & Co. v. N.L.R.B., 388 F.2d 892 (C.A. 4, 1967).

Section 10(*l*) of the Act embodies the determination of Congress that even the threatened disruption of commerce by acts and conduct proscribed by Section 8(b) (4) (i) and (ii), subparagraph (D), is unjustified and inimical to the national interest. In that section, therefore, Congress imposed a mandatory duty upon the Board's officer or regional attorney to whom the matter is referred, to seek injunctive relief in the appropriate district court upon a reasonable belief that a violation has occurred and empowered the court petitioned to grant the injunctive relief deemed "just and proper." The legislative history of the Act shows that Congress intended such power to be exercised by the court in aid of the "prompt elimination of the

obstructions to the free flow of commerce" which the relatively slow procedures before the Board had failed to achieve. Kennedy v. Sheet Metal Workers Int. Ass'n Local 108, *supra.*

Under these circumstances, the propriety of injunctive relief in Section 10(*l*) cases turns not upon traditional equity criteria applicable in suits between private parties, but upon the necessity for effectuating the statutory policy. Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944). Congress sets the standards for the issuance of injunctions. Those standards, and no others, need be satisfied to sustain the prayer for injunctive relief.

The respondent's conduct, designed to defeat the objectives of the Act and to disrupt the operations of the construction project, is the kind of activity intended by Congress to be enjoined by a district court under the "just and proper" criteria established by the Act for the exercise of its functions.

"For the standards of the public interest, not the requirements of private litigation, measure the propriety and need for injunctive relief in these cases." Hecht Co. v. Bowles, *supra*, at page 331, 64 S.Ct. at page 592. Congress has found that the discontinuance of conduct like respondent's pending the disposition by the Board of the unfair labor practice charges is necessary "adequately to protect the public welfare which is inextricably involved in labor disputes". (S.Rep.No.105, 80th Cong., 1st Sess., p. 8) "When Congress itself has struck the balance [between conflicting public interests] * * * a court of equity is not justified in ignoring the pronouncement under the guise of exercising equitable discretion." Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 609–610, 72 S.Ct. 863, 897, 96 L.Ed. 1153 (1952). "And the proper working of the scheme fashioned by Congress to determine industrial controversies fairly and peaceably demands that the courts quite as much as the administrative body act as Congress has required." N.L.R.B. v. Bradford Dyeing Ass'n, 310 U.S. 318, 343, 60 S.Ct. 918, 931, 84 L.Ed. 1226 (1940).

I therefore hold that this activity of the respondent upon which the charge was made before the Board was a jurisdictional demand upon the builders rather than an organizational activity on the part of the respondent, and that the Board had reasonable cause to believe that certain unfair labor practices existed which required it to act pursuant to Congressional authority.

Accordingly, the relief sought by the petitioner will be granted.

## ORDER GRANTING TEMPORARY INJUNCTION

This cause came on to be heard upon the verified petition of Henry Shore, Regional Director for Region Six of the National Labor Relations Board, for and on behalf of said Board, for a temporary injunction pursuant to Section 10(*l*) of the National Labor Relations Act, as amended, pending the final disposition of the matters involved pending before said Board, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed in said petition. The Court, upon consideration of the pleadings, evidence, argument of counsel and the entire record in the case, has made and filed its Findings of Fact and Conclusions of Law, finding and concluding that there is reasonable cause to believe that respondent has engaged in, and is engaging in, acts and conduct in violation of Section 8(b) (4) (i) and (ii), subparagraph (D), of said Act and that such acts and conduct will likely be repeated or continued unless enjoined.

Now, therefore, upon the entire record, it is

ORDERED, ADJUDGED AND DECREED that, pending the final disposition of the matters involved pending before the National Labor Relations Board, the respondent United Brotherhood of Carpenters and Joiners of America, Carpenters District Council of Western Pennsylvania, AFL–CIO, its officers, representatives, agents, servants,

employees, attorneys, and all members and persons acting in concert or participation with them, be, and they hereby are enjoined and restrained from:

(a) Picketing at or in the vicinity of the 316 Construction Co., Inc., or Elman Associates, Inc., or any other related or associated corporation job at 7070 Forward Avenue, Pittsburgh, Pennsylvania;

(b) In any manner or by any means, including picketing, orders, directions, instructions, requests, or appeals, however given, made or imparted, or by any like or related acts or conduct, or by permitting any such to remain in existence or effect, engaging in, or inducing or encouraging any individual employed by 316 Construction Co., Inc., or Elman Associates, Inc., or any other related or associated corporation, or any other person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is to force or require 316 Construction Co., Inc., or Elman Associates, Inc., or any other related or associated corporation to assign the carpentry work at the 7070 Forward Avenue, Pittsburgh, Pennsylvania job, to employees who are members of, or represented by, respondent, rather than to employees who are not members of, or represented by, respondent, or any other labor organization.

## FINDINGS OF FACT and CONCLUSIONS OF LAW

This cause came on to be heard upon the verified petition of Henry Shore, Regional Director for Region Six of the National Labor Relations Board (the "Board"), for a temporary injunction pursuant to Section 10(*l*) of the National Labor Relations Act (the "Act"), as amended 29 U.S.C. § 160(*l*), pending the final disposition of the matters involved herein pending before the Board, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed in said petition. The respondent filed an answer to the petition. A hearing on the issues raised by the petition and answer, and as these were amended, was duly held on August 6, 1970. All parties were afforded full opportunity to be heard, to examine and cross-examine witnesses, to present evidence bearing on the issues, and to argue on the evidence and the law. The Court has fully considered the petition, answer, evidence and arguments of counsel. Upon the entire record, the Court makes the following:

## FINDINGS OF FACT

1. The petitioner is Regional Director for Region Six of the Board, an agency of the United States, and filed the petition herein for and on behalf of the Board.

2. On or about July 22, 1970, 316 Construction Co., Inc. ("316") pursuant to the provisions of the Act, filed with the Board a charge alleging that the United Brotherhood of Carpenters and Joiners of America, Carpenters District Council of Western Pennsylvania, AFL–CIO ("respondent"), a labor organization, has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b) (4) (i) and (ii), subparagraph (D) of the Act, as amended, 29 U.S.C. § 158(b) (4) (i) and (ii) (D).

3. The aforesaid charges were referred to the petitioner as Regional Director for Region Six of the Board.

4. There is, and the petitioner has, reasonable cause to believe that,

(a) Respondent is an unincorporated association and is an organization in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment or conditions of work.

(b) Respondent maintains its principal office at 495 Mansfield Avenue, Pittsburgh, Pennsylvania, and, at all times material herein, has been engaged within this judicial district in transacting business and in protecting the interests of its employee members.

(c) At all times material herein, Gene Smigas and Adam Petrovich have been agents of respondent.

(d) 316, a Pennsylvania corporation with its principal office at 526 Frick Building, Pittsburgh, Pennsylvania, is engaged in business as a general contractor in the construction industry.

(e) 316 is currently engaged, under contract with Mt. Royal Associates, in the construction of a 97-unit apartment building at 7070 Forward Avenue, Pittsburgh, Pennsylvania (hereinafter called the project).

(f) Elman Associates, Inc. is a Pennsylvania corporation with its principal office at 526 Frick Building, Pittsburgh, Pennsylvania, and engaged in the business of managing numerous apartment buildings located in the Pittsburgh area, and will act as managing agent for the project upon its completion.

(g) HBP Properties, Inc., a Pennsylvania corporation with its principal office at 526 Frick Building, Pittsburgh, Pennsylvania, is engaged in real estate management.

(h) Four Seasons Heating & Cooling Co., Inc., a Pennsylvania corporation with its principal office located at 526 Frick Building, Pittsburgh, Pennsylvania, is engaged in the sale and service of heating and cooling equipment.

(i) 316, Elman Associates, Inc., HBP Properties, Inc., and Four Seasons Heating & Cooling Co., Inc., are affiliated businesses with common ownership, officers, offices, employees, interrelationship of operations, centralized labor control, and as such constitute a single integrated business enterprise, for the common purpose of acquiring apartment sites, constructing apartment buildings, and maintaining and renting the constructed apartments.

(j) During the past twelve months, Elman Associates, Inc., has received, directly or indirectly, from places outside the Commonwealth of Pennsylvania, goods and materials valued in excess of $50,000, for use at the various construction projects.

(k) In connection with the performance of the work described in these Findings of Fact, Elman, president of 316, on or about July 1, 1970, assigned the carpentry work at the project to two of his five common carpenters, none of whom are members of, or represented by, respondent or any other labor organization.

(l) Since on or about July 21, 1970, respondent has demanded that Elman assign the work referred to in Findings of Fact 4(k) above, to employees who are members of, or represented by, respondent rather than to Elman's employees and Elman has refused to accede to the demand.

(m) Since July 22, 1970, the respondent through its agents has picketed the construction project and has induced deliverymen of supplies to refuse to unload and deliver project supplies, and has been instrumental in stopping independent sub-contractors, McKeesport Excavating Co. and McKinney Drilling Co., from the performance of a part of the construction work.

(n) At no time material herein has the respondent been certified by the Board as the collective-bargaining representative of Elman's employees engaged in the work set forth in Findings of Fact 4(k) above, and at no time material herein has the Board issued an order directing Elman to bargain with respondent as the representative of any employees.

(o) In support of its demands as set forth in Findings of Fact 4(l) above, the respondent, commencing on or about July 22, 1970, and continuing thereafter, has picketed the project described in Findings of Fact 4(e) above.

(p) By the acts and conduct of respondent described in Findings of Fact 4(o) above, and by other means, including orders, directions, instructions, requests and appeals, respondent has engaged in, and induced and encouraged individuals employed by Elman and by other persons engaged in commerce, or in industries affecting commerce, to engage in strikes or refusals in the course of their employment to use, process, transport, deliver, or otherwise handle or work on goods, articles, materials,

supplies or other commodities, or to perform services, and has threatened, coerced and restrained other persons engaged in commerce or in industries affecting commerce.

(q) An object of the acts and conduct of the respondent as described in Findings of Fact 4(o) and (p) above, was, and is, to force or require Elman to assign the carpentry work at the project to the employees who are members of, or represented by, the respondent, rather than to Elman's unrepresented employees who are not members of, or represented by, the respondent or any other labor organization.

5. It may fairly be anticipated that, unless enjoined, the respondent will continue to repeat the acts and conduct set forth in Findings of Fact 4(o), (p) and (q) above, or similar or like acts and conduct, in violation of Section 8(b) (4) (i) and (ii).

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and of the subject matter of this proceeding, and under Section 10(*l*) of the Act, as amended, 29 U.S.C. § 160(*l*), is empowered to grant injunctive relief.

2. There is, and the petitioner has, reasonable cause to believe:

(a) Respondent is a labor organization within the meaning of § 2(5) of the Act, as amended, 29 U.S.C. § 152(5).

(b) Elman is engaged in commerce or in an industry affecting commerce.

(c) Respondent has engaged in unfair labor practices within the meaning of Section 8(b) (4) (i) and (ii), subparagraph (D), of the Act affecting commerce within the meaning of Section 2(6) and (7) of the Act, as amended, 29 U.S.C. § 152(6) and (7), and a repetition of these practices will impair the policies of the Act as set forth in Section 1 thereof, as amended, 29 U.S.C. § 151.

3. To preserve the issues for the orderly determination as provided in the Act, it is appropriate, just and proper that, pending the final disposition of the matters herein involved pending before the Board, the respondent, its officers, representatives, agents, servants, employees, attorneys, and all members or persons acting in concert or participating with it, be enjoined and restrained from the commission or repetition of the acts and conduct set forth in Findings of Fact 4(o), (p) and (q) above, acts or conduct in furtherance or support thereof, or like or related acts or conduct, the commission of which in the future is likely and may fairly be anticipated from the respondent's acts and conduct in the past.