**Bernard SAMOFF, Regional Director of the Fourth Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD**

v.

**The BUILDING & CONSTRUCTION TRADES COUNCIL OF PHILADELPHIA AND VICINITY, AFL–CIO, James Loughlin, James O'Neill and Ed Goldstein.**

Civ. A. No. 34322.

United States District Court
E. D. Pennsylvania.

Nov. 8, 1963.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Julius G. Serot, Asst. Gen. Counsel, Leonard Leventhal, Regional Atty., Region 4, Leo F. Hannon, Robert T. Snyder, N. L. R. B., for petitioner.

Bernard N. Katz, Meranze, Katz & Spear, Philadelphia, Pa., for respondents.

LUONGO, District Judge.

Between September 17 and September 20, 1963, charges of unfair labor practices within the meaning of Sections 8(b) (7), 8(b) (7) (C), and 8(b) (4) (A) and (B) of the National Labor Relations Act, as amended, 29 U.S.C.A. §§ 158(b) (7), 158(b) (7) (C), and 158(b) (4) (A) and (B), were filed with the National Labor Relations Board against respondents by Fisher Construction Company (Fisher). Petitioner, Regional Director, seeks temporary injunctive relief against respondents pending disposition of those charges by the Board.

Fisher, a non-union general contractor, has been engaged, since May 20, 1963, in the construction of a motel under contract with International Motor Lodge, Inc. (Motor Lodge). Fisher has engaged numerous subcontractors to do portions of the work. Almost all of the subcontractors are non-union. During the first week of August, 1963, representatives of respondent, The Building & Construction Trades Council of Philadelphia and Vicinity, AFL–CIO (Building Trades Council), visited Fisher's office demanding to know who the subcontractors on the job were and, upon learning the names and ascertaining that they were non-union, demanded that the subcontracts be awarded to union subcontractors, threatening that unless the work was performed by union subcontractors, the job would "never get off the ground." Shortly thereafter, one Cahill, business agent for the Operating Engineers local and a representative of respondent Building Trades Council, visited Fisher's office suggesting ways and means by which a self-employed equipment operator working on the job could be required to join

the union. When Fisher did not indicate a willingness to accede to the several requests, picketing commenced on the job on August 15, 1963.

On the day before the picketing commenced, J. H. Terry & Co., a union subcontractor engaged by Fisher to do the pile driving on the job, removed its equipment from the site following receipt of advices from the union delegate representing its employees that picketing would commence the next day and that Terry's employees would not cross the picket line. Terry had not finished the work called for in its subcontract when it left the job and it has not returned since.

After the picketing started, Cahill had discussions with Fisher in which he suggested that non-union subcontractors on the job be replaced with union subcontractors. When Fisher proposed that Terry be permitted to finish driving the remaining piles as a condition precedent to further negotiations and discussions Cahill declined on the ground that to do so would take away the union's bargaining powers.

From August 15 to September 10, 1963, respondents had 8 to 10 pickets at the job at all times. Commencing September 10 and continuing for some period thereafter, there were as many as 150 to 200 men at the construction site and numerous acts of violence were committed. Threats were made to workmen on the job and to drivers of trucks delivering supplies to the site. Pickets physically obstructed movement of trucks to and from the site. As a result of the acts of violence, an excavating subcontractor left the job and has not returned since. Picketing was conducted not only at the construction site, but also at the Chester plant of the concrete supplier, Warner Company, and at the place of business of the masonry supplier, Fizzano, Inc., in Crum Lynne.

An injunction was sought and obtained in the Delaware County Court restraining the mass picketing and the acts of violence. Picketing has continued until this date under the restrictions and conditions imposed by that court in its injunction decree.

The legend of the picket signs asserts that the object of the picketing is to protest against destruction of prevailing area wage standards and conditions by those working on the Motor Lodge project. Fisher and several, if not all, of the non-union subcontractors on the job pay their employees substantially less than union rates. It has been established that union rates are the prevailing rates in the construction industry in this area.

■ To be entitled to injunctive relief in this application under Section 10(l), 29 U.S.C.A. § 160(l), the Regional Director need only demonstrate to the court that he has reasonable cause to believe that the elements of an unfair labor practice are present, and that there is substance to the principles of law which he has applied to the charges. Schauffler for and on Behalf of N. L. R. B. v. Local 1291, Internat'l Longshoremen's Ass'n, 292 F.2d 182 (3rd Cir. 1961). My role is limited to determining whether he has demonstrated such reasonable cause and, if I find that he has, to determine and to grant such relief as is "just and proper."

■ ■ Applying the test of Schauffler for and on Behalf on N. L. R. B. v. Local 1291, supra, I find and conclude from the evidence adduced before me that petitioner had reasonable cause to believe that respondents' picketing had as objects, at least in part, organization and recognition proscribed by Section 8(b) (7), and secondary boycott proscribed by Section 8(b) (4) (B), and he is, therefore, entitled to relief. Petitioner seeks a total ban on activity by respondents until disposition of the charges by the Board. I have been advised that it may take five months or longer for the Board to dispose of the charges. Construction of the motel will likely have concluded long before then. It does not impress me as "just and proper" to enjoin respondents from all activity before there has been a determination, on the merits,

that they have in fact committed unfair labor practices. I am not nearly as convinced as the petitioner seems to be that the protest against destruction of area standards is sham. Until the Board has made its determinations respondents should be permitted to make known to the public and to persons dealing with them that specified employers on the job are not paying the wages and observing the conditions which other employers in the industry are, providing the information is imparted in a way to make it clear that that is the sole object of the picketing.

In light of all that has taken place up to now, it would be just and proper to require a reasonable period of time during which there is a complete ban on picketing, to serve as a change of pace, as it were, from that which has gone before to that which will be permitted until the charges have been determined by the Board. In the injunction which will issue, therefore, I will impose a complete ban for approximately two weeks and, thereafter, picketing will be permitted, with a limited number of pickets and subject to certain conditions, including approval by the court of the legend on the signs.

The foregoing shall constitute my findings of fact and conclusions of law. In addition I affirm petitioner's requested findings of fact Nos. 1 through 5 inclusive, including the subparts of each, except that there shall be added to 2(b) the following sentence: "The charge of violation of Section 8(b) (4) (A) has since been withdrawn."; respondents' requested findings of fact Nos. 1, 2 and 5 in their entirety and the first two complete sentences of request No. 6; petitioner's requested conclusions of law Nos. 1 and 2.

All other requested findings of fact and conclusions of law, to the extent not adopted herein, are refused. Petitioner's requested conclusion of law No. 3 is declined in favor of the conclusion hereinabove set forth, that petitioner is entitled to relief.