Bernard **SAMOFF,** Regional Director of the Fourth Region of the National Labor Relations Board, for and on Behalf of the **NATIONAL LABOR RELATIONS BOARD,**

v.

**BUILDING TRADES COUNCIL OF PHILADELPHIA AND VICINITY,** and United Slate, Tile and Composition Roofers, Damp and Waterproof Workers, Local No. 30, AFL–CIO.

Civ. No. 72–1751.

United States District Court,
E. D. Pennsylvania.

Oct. 4, 1972.

Harold Bernard, Jr., Philadelphia, Pa., for petitioner.

Bernard N. Katz, Philadelphia, Pa., for respondents.

OPINION AND ORDER

HIGGINBOTHAM, District Judge.

I.

This case is before me on a petition filed by Bernard Samoff, Regional Director of the Fourth Region of the National Labor Relations Board (hereinafter referred to as "NLRB"), pursuant to § 10($l$) of the National Labor Relations Act (hereafter referred to as "Act"), 29 U.S.C. § 160($l$), which provides in relevant part:

> "Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of . . . section 158(b)(7) of this title, the preliminary investigation of such charge shall be made forthwith. . . .

> If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business for appropriate in-

junctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief . . . as it deems just and proper, . . . Upon filing of any such petition the court shall cause notice thereof to be served upon any person involved in the charge and such person, including the charging party, shall be given an opportunity to appear by counsel and present any relevant testimony: *Provided further,* That for the purposes of this subsection district court shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in promoting or protecting the interests of employee members. The service of legal process upon such officer or agent shall constitute service upon the labor organization and make such organization a party to the suit. In situations where such relief is appropriate the procedure specified herein shall apply to charges with respect to section 158(b)(4)(D) of this title."

The Regional Director is here seeking injunctive relief against the Building Trades Council of Philadelphia and Vicinity (hereinafter referred to as "council"), and the United Slate, Tile and Composition Roofers, Damp and Waterproof Workers, Local No. 30, AFL-CIO (hereinafter referred to as "Local 30"), pending final disposition by the NLRB of alleged violations of §§ 8(b)(4)(i)(ii)(D) and 8(b)(7) (29 U.S.C. §§ 158(b)(4)(i)(ii)(D) and 158(b)(7)) by the Council and Local 30.

§ 8(b)(4)(i)(ii)(D) makes it an unfair labor practice for a labor organization or its agents

". . . to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

\*  \*  \*  \*  \*  \*

"(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class, rather than to employees in another labor organization or in another trade, craft or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work. . . ."

Similarly, § 8(b)(7)(A) makes it an unfair labor practice for a labor organization or its agents

". . . to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:

"(A) where the employer has lawfully recognized in accordance with this subchapter any other labor organization and a question concerning representation may not appropriately be raised under section 159(c) of this title, . . ."

For the reasons appearing hereinafter, I find that there is reasonable cause to believe that a violation of the Act has been committed and that an injunction should issue pending final determination of the matter by the NLRB.

## II.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW [1]

This case came to be heard upon the verified petition of Bernard Samoff, Regional Director of the Fourth Region of the National Labor Relations Board, for a temporary injunction pursuant to Section 10(*l*) of the National Labor Relations Act, as amended, pending the final disposition of the matters involved pending before the NLRB, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed in said petition. Hearings on the issues raised by the petition were duly held on September 14, 1972, and September 19, 1972. All parties were afforded full opportunity to be heard, to examine and cross-examine witnesses, to present evidence bearing on the issues, and to argue on the evidence and the law. The Court has fully considered the petition, answer, evidence, arguments, and briefs of counsel. Upon the entire record, the Court makes the following:

### FINDINGS OF FACT

1. Petitioner is Regional Director of the Fourth Region of the NLRB, an agency of the United States, and filed this petition for and on behalf of the NLRB.

2. On or about July 31, 1972, I. G. Wheeler & Sons, Inc., pursuant to provisions of the Act, filed charges with the NLRB alleging that the Council and Local No. 30 (herein called Respondent Council and Respondent Local respectively and herein collectively also called Respondents), labor organizations, have engaged in, and are engaging in, unfair labor practices within the meaning of Sections 8(b)(4)(i)(ii), subparagraph (D), and 8(b)(7), subparagraph (A) of the Act.

3. The aforesaid charges were referred to Petitioner as Regional Director of the NLRB.

4. There is, and Petitioner has reasonable cause to believe that,

(a) Respondents and International Union District 50, Allied and Technical Workers of the United States and Canada, Local Union No. 14210, (hereinafter referred to as District 50) are organizations in which employees participate and which exist for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

(b) Respondent Council is an unincorporated association composed of affiliated labor organizations, including Respondent Local, in the building and construction industry and is an agent of said affiliated labor organizations.

(c) At all times material herein Steven Traitz has been a business agent of Respondent Local and has acted as an agent of Respondents within the meaning of Sections 2(13), 8(b) and 10(*l*) of the Act.

(d) At all times material herein Bernard N. Katz has been attorney for Respondents and has acted as an agent of Respondents within the meaning of Sections 2(13), 8(b) and 10(*l*) of the Act.

(e) Respondent Council maintains its principal office at 2535 Orthodox Street, Philadelphia, Pennsylvania, and Respondent Local maintains its principal office at 6447 Torresdale Avenue, Philadelphia, Pennsylvania, and at all times material herein Respondents have been engaged within this judicial district in transacting business and in promoting and protecting the interest of employee-members.

---

[1]. I recognize that my findings of fact and conclusions of law are not final in the sense that their ultimate resolution is left to the NLRB. They merely represent a finding that there is reasonable cause to believe that a violation of the Act has occurred. Terminal Freight Cooperative Assoc. v. N. L. R. B., 447 F.2d 1099, 1102 (3rd Cir. 1971); Schauffler for and on Behalf of N. L. R. B. v. Local 1291, Int'l. Longshoremen's Assoc., 292 F.2d 182, 186 and fn. 4 (3rd Cir., 1961).

(f) Wheeler is a Delaware corporation with its principal office in Morgan, Pennsylvania, and at all times material herein, has been engaged in industrial roofing, repair and replacement. Currently Wheeler is engaged in replacing a roof for Bethlehem Steel Corporation (hereinafter referred to as "Bethlehem"), at a Bethlehem plant in Pottstown, Pennsylvania. In the course of its business, Wheeler annually purchases supplies valued in excess of $50,000 from suppliers located outside Pennsylvania.

(g) At no time material herein have Respondents been certified by the NLRB as the collective bargaining representatives of any of Wheeler's employees, nor has the NLRB issued an order directing Wheeler to bargain with Respondents as the representatives of any of Wheeler's employees.

(h) For approximately ten years Wheeler has recognized and has had collective bargaining contracts with District 50, a labor organization within the meaning of Section 8(b)(7) of the Act, as the collective bargaining representative of Wheeler's employees including mop man, carpenter, handyman, laborers, mechanics, and clean-up man. The latest collective bargaining contract currently in effect between Wheeler and District 50 was executed on April 15, 1970 and is effective until April 15, 1973.

(i) No charge has been filed with the NLRB under Section 8(a)(2) of the Act alleging that Wheeler unlawfully recognized, or entered into the aforesaid contract with District 50, and at no time material herein could a question concerning representation of any of Wheeler's employees, described above appropriately be raised under Section 9(c) of the Act.

(j) Notwithstanding the aforesaid, Respondents, since on or about July 24, 1972, have picketed Wheeler's job site at the Bethlehem plant in Pottstown, Pennsylvania, described in Finding of Fact (FF) 4(f) above.

(k) In connection with the aforesaid picketing Respondents on the date set forth below, engaged in the following conduct:

(1) On or about July 24, 1972, physically blocked and sought to prevent Bethlehem management from entering the Pottstown plant.

(2) On or about July 24, 1972, physically blocked an individual employed by Bethlehem from entering the Pottstown plant and physically assaulted said individual.

(3) On or about July 25, 1972, physically blocked an individual employed by Parent Metal Products from entering the Pottstown plant and threatened said individual.

(4) On or about July 25, 1972, through Traitz, threatened Bethlehem with more trouble if Bethlehem used Wheeler's employees to do the roofing work at the Pottstown plant.

(l) By the acts and conduct set forth in Findings of Fact 4(j) and (k)(2) and (3) above Respondents have induced and encouraged individuals employed by Wheeler, Bethlehem and Parent Metal Products and other persons engaged in commerce or in an industry affecting commerce to engage in a strike or a refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials or commodities or to perform any services.

(m) By the acts and conduct set forth in Findings of Fact 4(j) and (k)(1) and (4) Respondents have threatened, coerced and restrained Wheeler, Bethlehem and other persons engaged in commerce or in industries affecting commerce.

(n) An object of Respondents' conduct set forth in Findings of Fact 4(j) and (k) above, is to force or require Wheeler to assign the roofing work at Bethlehem's Pottstown plant described in Finding of Fact 4(f) above to employees who are members of, or represented by, Respondents, rather than to employees

who are members of, or are represented by District 50.

(o) An object of Respondents' picketing set forth in Finding of Fact 4(j) above, is to force or require Wheeler to recognize or bargain with Respondents as the representative of Wheeler's employees including mop man, carpenter, handyman, laborers, mechanics and clean-up man, and to force or require said employees to accept or select Respondents as their collective bargaining representatives, notwithstanding that Respondents are not currently certified as the representative of such employees, Wheeler has lawfully recognized in accordance with the Act another labor organization as the representative of such employees, and a question concerning the representation of such employees may not appropriately be raised under Section 9(c) of the Act.

(p) The acts and conduct of Respondents set forth in Findings of Fact 4(j) through (o), above, occurring in connection with the operation of Wheeler, have a close, intimate, and substantial relation to trade, traffic and commerce among the several states and tend to lead to and do lead to labor disputes burdening and obstructing commerce and the free flow of commerce.

5. It may be fairly anticipated that unless enjoined, Respondents will continue and repeat the acts and conduct set forth in Findings of Fact 4(j) through (o), above, or similar or like acts and conduct.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and of the subject matter of this proceeding, and under Section 10(l) of the Act, is empowered to grant injunctive relief.

2. There is, and Petitioner has, reasonable cause to believe, that:

(a) Respondents are labor organizations within the meaning of Sections 2(5), 8(b) and 10(l) of the Act, and are agents of labor organizations within the meaning of the Act.

(b) Wheeler is an employer engaged in commerce within the meaning of Sections 2(6) and (7) of the Act.

(c) Respondents have engaged in unfair labor practices within the meaning of Sections 8(b)(4)(i)(ii) subparagraph (D), and 8(b)(7), subparagraph (A), of the Act, and a continuation of these practices will impair the policies of the Act as set forth in Section 1(b) thereof.

3. To preserve the issues for the orderly determination as provided in the Act, it is appropriate, just, and proper that, pending the final disposition of the matters herein involved pending before the NLRB, Respondents, their officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with them, be enjoined and restrained from the commission, continuation, or repetition of the acts and conduct set forth in Findings of Fact 4(j) through (o), above, acts or conduct in furtherance or support thereof, or like or related acts or conduct, the commission of which in the future is likely or may fairly be anticipated from Respondent's acts and conduct in the past.

## III

The only subject requiring extended comment by this Court is the factual contention raised by the Council and Local 30, namely, that the *object* of the picketing here in question was not to force the assignment of work to Local 30 or to force Wheeler to recognize Local 30. Rather, the Union contends that the object of the picketing was to protest Wheeler's payment of wages below those prevailing for the roofing industry in the Eastern Pennsylvania area. In discussing whether this Court has reasonable cause to believe that a violation of the Act has occurred both the § 8(b)(4)(i)(ii)(D) and the § 8(b)(7)(A) claims can be considered together.

§ 8(b)(4)(D) as quoted above, by its own terms, prohibits all strike conduct or any threats, coercion or restraint where the object is the pro-

scribed one of forcing the assignment of work to another union, i.e., a jurisdictional dispute. Shore v. United Brotherhood of Carpenters, 316 F.Supp. 426, 431 (W.D.Pa.1970). Thus, an employer should be free to make work assignments as in this case and choose a subcontractor whose employees are members of another union without being subjected to pressure from another labor organization. Here, there was ample evidence presented at the hearings to indicate that the object of picketing was to force the assignment of the work in question to Local 30. There was evidence of threats (N.T., (9/14/72) pp. 12, 19, 25, 26, 32); violence (N.T., (9/14/72) p. 19); blockage of access to the plant (N.T., (9/14/72) p. 37). On the other hand, there was no evidence that any of the *pickets* mentioned the alleged protest over Wheeler's failure to pay the area wage rates. (N.T., 35, 36, 41). A viewing of the picket line would disclose that while the pickets' signs indicated that the nature of the protest was over area wage rates, the acts of the pickets, as indicated above, are consistent with a finding that at least *one* of the pickets' objectives was to force the assignment of work to Local 30.

Further, counsel for the Respondent Council and Local 30, Bernard N. Katz, Esquire, when asked by the President of Wheeler how the picket line could be removed was told by Katz that the "quick, simple way" was to sign an "assent agreement" with Local 30 and use Local 30 people to finish the job. (N.T., (9/19/72), pp. 21, 36–38, 62.) Thus, the pickets own attorney admitted that the signing of an agreement with Local 30 would end the picketing.

██ Thus, one of the effects and objects of the picketing was to accomplish by threats and coercion [§ 8(b)(4)(D)] and by picketing [§§ 8(b)(4)(D) and 8(b)(7)(A)] the assignment of work to Local 30 and away from Wheeler's duly recognized union, District 50. However, a subsidiary objective here might be informational, telling Wheeler's employees and the public of Wheeler's failure to observe area wage standards. But, where at least *one* of the objects of the picketing was that proscribed by statute, the picketing should and must be enjoined. E.g., Samoff for and on Behalf of N.L.R.B. v. Teamsters Local 115, 338 F.Supp. 856 (E.D.Pa.1972); Samoff for and on Behalf of N.L.R.B. v. Keystone District Council of Carpenters, 320 F.Supp. 327 (M.D.Pa.1970); Samoff for and on Behalf of N.L.R.B. v. Building & Construction Trades Council of Philadelphia, 236 F.Supp. 120 (E.D. Pa.1963). See also, Schauffler for and on Behalf of N.L.R.B. v. Local 1291, International Longshoremen's Assoc., 292 F.2d 182, 188 (3rd Cir.1961); Schauffler v. United Assoc. of Journeymen, etc., 218 F.2d 476 (3rd Cir.1955).

The record of the instant case makes demonstrably clear that the defendants in their conduct are not gentle people. Their threats of violence have been instantaneous and unrestrained; by their strategy and their conversations even the stronghearted would have been intimidated and coerced. One member of the United Steel Workers Union and an employee of Bethlehem, who wore a hearing aid and glasses, James Angstadt, attempted to cross the picket line and go to work when the following attack occurred:

"Then he got off my car and I pulled forward and went up to work. Then one of the men came around to the car, my window was down, and punched me in the mouth, . . ." (N.T. (9/14/72) p. 19).

Another incident involved Mr. N. L. Young, a salesman for Parent Metal Products Company of Philadelphia, who, upon arriving at the picket line on July 24, 1972, was threatened as follows:

"Well, what are you some f...ing scab?"

The picket then said to him:

"You are the kind of so-and-so that should be knocked down and have his face kicked in." (N.T. (9/14/72) p. 25.)

The mood of the picket line is best exemplified by the statements of Steven Traitz, Business Agent for Local 30. When Mr. M. N. Shelton, Jr., a labor attorney for Bethlehem, attempted to read a telegram to Mr. Traitz explaining the establishment of a "reserve gate" for Wheeler employees, Mr. Traitz stated, "You can send a 'f...ing' telegram to the Pope for all I care." (N.T. (9/14/72) p. 32.)

The second day of picketing, July 25, 1972, did not evidence any change in the attitude of Mr. Traitz; for when Mr. Shelton attempted to hand the telegram in question to Mr. Traitz, Mr. Traitz responded, "If you touch me, I will break your 'f...ing' head." (N.T. (9/14/72 p. 32.)

Mr. Shelton's testimony continues:

"At that point I said, 'Are you refusing to take this?' And he cursed me with a number of names. I remember one, 'm.... f...er,' and some time at this point someone asked and I can't be sure who, but one of the pickets asked me 'Where are you staying tonight?'

\*     \*     \*     \*     \*     \*

"After we had been sitting down a couple of minutes Mr. Traitz said, 'Hey, mouthpiece. Hey lawyer. Stand up.'

"I didn't stand up.

"He said, 'If you think you have got your troubles now, just try bringing in those 'f...ing' roofers." (N.T. (9/14/72) p. 33.)

It is thus obvious that the message came through to all that challenging the Roofers' Union, Local 30, was not merely a breach of labor etiquette, but a risk of personal safety.

This Court is not articulating an Emily Post rule for picketing. These are issues which all of the parties obviously feel quite strongly about; but when they resort to violence, with a course of conduct for which there is cause to believe violates the federal labor statutes, the Regional Director has a right to seek judicial relief, and the relief is warranted here.

### INJUNCTION AND ORDER

This case came to be heard upon the verified petition of Bernard Samoff, Regional Director of the Fourth Region of the NLRB, for and on behalf of said NLRB, praying for a temporary injunction pursuant to Section 10(*l*) of the National Labor Relations Act, as amended, pending the final dispostion of the matters involved pending before said NLRB, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed in said petition. The Court, upon consideration of the pleadings, evidence, briefs, arguments of counsel and the entire record in the case, has made and filed its Findings of Fact and Conclusions of Law, finding and concluding that there is reasonable cause to believe that Respondents have engaged in, and are engaging in, acts and conduct in violation of Sections 8(b)(4)(i)(ii), subparagraph (D) and 8(b)(7), subparagraph (A), of said Act, affecting commerce within the meaning of Sections 2(6) and (7) of said Act, and that such acts and conduct will likely be repeated or continued unless enjoined.

And now, this 3rd day of October, 1972, it is hereby ordered, adjudged and decreed that, pending the final disposition of the matters involved pending before the National Labor Relations Board, Respondents, Building Trades Council of Philadelphia & Vicinity, and United Slate, Tile and Composition Roofers, Damp and Waterproof Workers, Local No. 30, AFL–CIO, their officers, representatives, agents, servants, employees, attorneys and all members and persons acting in concert or participation with it or them, be and they

hereby are enjoined and restrained from:

(a) Continuing their current picketing of Wheeler at Bethlehem's Pottstown plant; or

(b) Otherwise picketing or causing Wheeler or any other person to be picketed, or threatening to picket or cause Wheeler or any other person to be picketed, where an object thereof is to force or require Wheeler to recognize or bargain with Respondents, or any other labor organization, as the representative of Wheeler's employees, including mop man, carpenter, handyman, laborers, mechanics and clean-up man, or to force or require said employees to accept or select Respondents or any other labor organization, as their collective bargaining representative, until the NLRB determines that a question concerning representation of such employees may appropriately be raised under Section 9(c) of the Act; or

(c) In any manner or by any means, including picketing, orders, directions, instructions, requests, or appeals, however given, made or imparted or by any like or related acts or conduct, or by permitting any such to remain in existence or effect, engaging in, or inducing or encouraging any individual employed by Wheeler, Bethlehem, Parent Metal Products or by any other person engaged in commerce or in an industry affecting commerce, to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials or commodities, or to perform any service, or in any manner or by any means, threatening, coercing, or restraining Wheeler, Bethlehem or any other person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is to force or require Wheeler to assign roofing work to employees who are members of, or represented by Respondents rather than to employees who are members of, or represented by, District 50.